[Cite as *Dalzell v. Rudy Mosketti, L.L.C.*, 2016-Ohio-3197.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

HEATHER DALZELL, et al.                    :
                                           :
        Plaintiff-Appellant                :      C.A. CASE NO.   2015-CA-93
                                           :
v.                                         :      T.C. NO. 15-CV-6
                                           :
RUDY MOSKETTI, LLC, et al.                 :      (Civil Appeal from
                                           :       Common Pleas Court)
        Defendants-Appellees               :
                                           :

. . . . . . . . . . .

# O P I N I O N

Rendered on the ___27th___ day of ____May____, 2016.

. . . . . . . . . .

MICHAEL T. EDWARDS, Atty. Reg. No. 0082030, 41 East Main Street, Enon, Ohio 45323
        Attorney for Plaintiff-Appellant

JUDD R. UHL, Atty. Reg. No. 0071370 and PATRICK B. HEALY, Atty. Reg. No. 0083756, 909 Wrights Summit Parkway, Suite 230, Ft. Wright, Kentucky 41011
        Attorneys for Defendants-Appellees

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Heather Dalzell appeals from a judgment of the Clark County Court of Common Pleas, which granted a motion for summary judgment filed by RJM Smokehouse, LLC, dba Rudy's Smokehouse, on Dalzell's personal injury claim.   For the

following reasons, the judgment of the trial court will be affirmed.

*Procedural History*

{¶ 2} On July 25, 2013, Dalzell dined at Rudy's Steakhouse on Bechtle Avenue in Springfield. When she attempted to sit on a bench at the restaurant, the bench broke and she suffered an injury. On January 8, 2015, Dalzell filed a complaint for negligence against the restaurant's owner and manager; the complaint was subsequently amended to name the corporation, RJM Smokehouse, LLC, dba Rudy's Smokehouse. The complaint alleged that RJM had breached its duty to ensure that the furniture at the restaurant was "in safe and serviceable condition" and to train all employees to "be vigilant in looking for hazards."

{¶ 3} On August 28, 2015, RJM filed a motion for summary judgment. On September 16, 2015, Dalzell filed a memorandum contra the motion for summary judgment. The trial court granted the motion on October 6, 2015.

{¶ 4} Dalzell raises one assignment of error on appeal, which states that the trial court erred in granting summary judgment in favor of RJM.

*Summary Judgment Standard and Appellate Review*

{¶ 5} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526

N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

**{¶ 6}** Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

**{¶ 7}** We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness,* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond,* 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8, citing *Brewer v. Cleveland City Schools Bd. of Edn.,* 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997).

*Negligence Standard*

**{¶ 8}** In order to establish actionable negligence, a plaintiff must demonstrate the existence of a duty, a breach of the duty, and an injury proximately resulting from the breach. *Menifee v. Ohio Welding Prod., Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984); *Gregory v. Towne Properties, Inc.,* 2d Dist. Montgomery No. 26410, 2015-Ohio-443, ¶ 23; *Turk v. NovaCare Rehab. of Ohio,* 8th Dist. Cuyahoga No. 94635, 2010-Ohio-6477, ¶ 16, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.,* 81 Ohio St.3d

677, 680, 693 N.E.2d 271 (1998).

{¶ 9} Business invitees are persons who come upon the premises of another, by express or implied invitation, for some purpose which is beneficial to the owner. *Light v. Ohio Univ.,* 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986). A restaurant guest, such as Dalzell, is a business invitee. It is the duty of the owner of the premises to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition. *Id.*; *Gibbs v. Speedway, LLC*, , 2014-Ohio-3055, 15 N.E.3d 444, ¶ 12 (2d Dist.). In other words, an owner of a business premises owes customers a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.,* 18 Ohio St.3d 203, 203, 480 N.E.2d 474 (1985). This duty includes the owner's obligation "to exercise reasonable care to warn patrons of known hazards." *Anderson v. Elifritz, Inc.,* 2d Dist. Montgomery No. 12575, 1991 WL 227616, *1 (July 9, 1991).

{¶ 10} An owner "is not, however, an insurer of the customer's safety." *Paschal* at 203; *Blair v. Vandalia United Methodist Church,* 2d Dist. Montgomery No. 24082, 2011-Ohio-873, ¶ 15. Liability arises when an owner has "superior knowledge of the particular danger which caused the injury," as an "invitee may not reasonably be expected to protect himself [or herself] from a risk he [or she] cannot fully appreciate." *Uhl v. Thomas,* 12th Dist. Butler No. CA2008-06-131, 2009-Ohio-196, ¶ 13, quoting *LaCourse v. Fleitz,* 28 Ohio St.3d 209, 210, 503 N.E.2d 159 (1986).

{¶ 11} Whether an owner has breached its duty depends on the owner's knowledge of the hazard and opportunity to remove it or warn of it. *Colville v. Meijer Stores Ltd.,* 2d Dist. Miami No. 2011-CA-011, 2012-Ohio-2413, ¶ 23, citing *Menifee* at 77

and *Anaple v. Standard Oil Co.,* 162 Ohio St. 537, 124 N.E.2d 128 (1955). "Where negligence revolves around the question of the existence of a hazard or defect, the legal principle prevails that notice, either actual or constructive, of such hazard or defect is a prerequisite to the duty of reasonable care." *Allen v. Memering,* 2d Dist. Greene No. 06-CA-16, 2007-Ohio-1506, ¶ 8, citing *Heckert v. Patrick,* 15 Ohio St.3d 402, 473 N.E.2d 1204 (1984).

*Evidence Presented Relevant to Summary Judgment*

{¶ 12} RJM's motion for summary judgment relied on deposition testimony from Dalzell, an affidavit from the manager of the restaurant, and an "impact report" prepared by the manager after the incident.

{¶ 13} In her deposition testimony, Dalzell testified that she had been at the restaurant with her mother, daughter, niece, and infant son. They had ordered their food inside and proceeded to an outdoor eating area with picnic tables. Dalzell's daughter picked the table at which the group sat. Dalzell's mother sat on one side, the two girls sat on the other (the side on which Dalzell would eventually attempt to sit), and the baby was placed in a car seat atop the table. Everyone in the group took a seat at the table except Dalzell, who returned inside the restaurant to retrieve their food. Dalzell testified that she did not notice anything "out of the ordinary" or visibly wrong with the bench prior to her fall, that her niece and daughter were already sitting on the bench on which Dalzell attempted to sit and had not commented on any problem with the bench, and that she had not heard any noises coming from the bench. When Dalzell returned with the food and sat on the bench, it broke and she fell to the ground.

{¶ 14} It is apparent from some of the questions asked at Dalzell's deposition that

the restaurant was no longer open when the deposition was taken and that the picnic tables in question were no longer available for inspection. However, one "poor photo" of the table (with the broken bench) was referenced in Dalzell's deposition,[1] and a photograph of a picnic table with a broken bench was attached to her memorandum contra the motion for summary judgment. When Dalzell testified about the photo, there was no objection on the basis that the photo was not authenticated. We presume that the two photographs are the same, although the record does not establish this fact. The photo depicts a picnic table with two attached benches, one on each side. Neither the photograph's source nor the time at which it was taken is established in Dalzell's deposition (to the extent that it has been made a part of the record) or any of the affidavits presented. RJM stated in response to interrogatories that "no photographs or drawings were taken or created" by it, so one might reasonably infer that Dalzell or someone acting on her behalf took the photo. However, it apparently was not taken on the day of Dalzell's fall, because, when she was asked at her deposition if the picture "fairly and accurately represent[ed]" the table, she responded affirmatively, except to state that "there were no umbrellas at that time."

{¶ 15} The affidavit of Karen Ratcliff, the manager of Rudy's Smokehouse restaurant at the time of the incident, stated that the picnic table in question, as well as about four other tables, had been purchased from "Lowe's Hardware in approximately in [sic] late 2012." (The injury occurred in July 2013.) She further stated that no one from the restaurant had ever altered, modified, or repaired the table in question, that no

---

[1] It is not apparent from the record whether the photograph was attached to the deposition as an exhibit, but it is not included with the portions of the deposition attached to the motion for summary judgment.

customers had complained about the condition of any of the tables, and that the tables and picnic area were cleaned and "inspect[ed]" by employees at the close of business each day. Ratcliff stated that "no defect or dangerous condition" had been observed with respect to the picnic table in question prior to Dalzell's fall. Ratcliff's affidavit did not state that she had been present at the time of Dalzall's fall or had any personal knowledge of the circumstances surrounding it.

{¶ 16} An undated "impact report" signed by Ratliff was also attached to the motion for summary judgment. The only reference in the impact report to the condition of the benches was Ratliff's statement of the following: "The picnic benches were all in good order. There hadn't been any other occurrences before or after." In other respects, the facts stated in this report conflict with the facts recounted by Dalzell and her mother in terms of who was present at the time of Dalzell's fall, particularly whether Ratcliff herself was present and with whom Dalzell was dining. Specifically, the impact report states that "a female guest" came to the restaurant "with her husband and another couple." The impact report also states that Ratcliff "walked out with the food" and immediately checked on "her" (the female guest) when Ratcliff saw that the bench had broken, that the guest "assured [Ratcliff] she was fine," that the guest was not limping and did not appear to be in any pain. Dalzell is not identified by name in the impact report.

{¶ 17} Dalzell opposed RJM's motion for summary judgment. Her memorandum contra was supported by her own affidavit and an affidavit from her mother, who was present at the time of the fall. In her own affidavit, Dalzell asserted that, "due to the difference of appearance of the benches on the picnic table in question," she believed that "one side of the picnic table had been replaced." However, the portions of Dalzell's

deposition attached to the motion for summary judgment do not contain such testimony, and Dalzell has not provided any additional portions of the deposition. Dalzell's mother's affidavit corroborated Dalzell's statements that the two women had been dining with Dalzell's two children and Dalzell's niece on the night in question. The mother also stated that the women never met or spoke with Ratcliff that night.

{¶ 18} Dalzell's memorandum focused primarily on the accuracy and veracity of Ratcliff's impact report and argued that, in light of the impact report, the court should find that Ratcliff's affidavit had been made in bad faith. The memorandum also addressed RJM's duty of care, claiming that RJM had not provided the discovery necessary to support Dalzell's claims that the benches had been replaced or had not been properly repaired and maintained. (In response to a request for production of documents related to maintenance logs "for all tables, chairs, booths and other equipment or furniture," RJM stated that "[n]o such logs exist"). Dalzell's memorandum also expressed skepticism about RJM's assertion, in response to a request for production of any receipts documenting when and where the tables were purchased and how much they cost, that it did not have such receipts. Dalzell characterized the tables as "a major building improvement that was undoubtedly used as a tax deduction," but she did not request copies of RJM's tax returns. She also did not file a motion pursuant to Civ.R. 56(F) requesting time to engage in additional discovery before responding to the motion for summary judgment.

*Analysis*

{¶ 19} In support of its motion for summary judgment, RJM produced an affidavit from its manager, Ratcliff, stating that the tables had been purchased from Lowe's less

than one year before the accident, that no one from the restaurant had ever altered, modified, or repaired the table that broke, that no customers had complained about the condition of any of the tables, and that the tables and picnic area were cleaned and inspected by employees each business day. Ratcliff further stated that no defect or dangerous condition had been observed with respect to the picnic table in question prior to Dalzell's fall. These assertions satisfied RJM's initial burden of affirmatively demonstrating that no genuine issue of material fact existed as to its knowledge of any problem with the benches or its duty to warn its invitees of a known risk associated with the benches.

**{¶ 20}** Dalzell's deposition testimony corroborates RJM's assertion that no problem with the benches was readily apparent from their appearance; even when Dalzell's daughter and niece[2] sat on the particular bench from which she fell, it did not make noise or exhibit any other characteristic that created any cause for concern within the group.

**{¶ 21}** Dalzell stated for the first time in her affidavit in support of her memorandum contra that "[i]t is my belief that due to the difference of appearance of the benches on the picnic table in question that one side of the picnic table had been replaced." The affidavit did not indicate specifically which part(s) of the table or benches appeared to have been replaced. This assertion contradicted Dalzell's earlier testimony that the appearance of the table and bench was not "out of the ordinary." Although Dalzell's brief asserts that the photograph of the table "clearly shows indications that they

---

[2] The ages of the daughter and niece are not apparent from the record before us, but they are referred to in Dalzell's deposition as "kids."

[sic] were excessively worn and damaged beyond the normal wear and tear of a table purchased less than a year ago," there was no testimony about where, in particular, the picture is alleged to show excessive wear and damage (other than the fact that the bench is broken). It is not apparent from the picture that any part of the table or benches had been replaced or repaired. Moreover, Dalzell's mother's affidavit does not corroborate Dalzell's assertion that parts of the table looked like they had been replaced.

**{¶ 22}** We have previously recognized that an "affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." *Gessner v. Schroeder,* 2d Dist. Montgomery No. 21498, 2007-Ohio-570, ¶ 53, citing *Byrd v. Smith,* 110 Ohio St.3d 24, 24-25, 2006-Ohio-3455, 850 N.E.2d 47, paragraph three of the syllabus. Furthermore, "a non-movant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence." *Schlaegel v. Howell*, 2015-Ohio-4296, 42 N.E.3d 771, ¶ 23 (2d Dist.), quoting *White v. Sears, Roebuck & Co.,* 10th Dist. Franklin No. 10AP-294, 2011-Ohio-204, ¶ 9.

**{¶ 23}** "[W]hen the moving party puts forth evidence tending to show that there are no genuine issues of material fact, the nonmoving party may not avoid summary judgment solely by submitting a self-serving affidavit containing no more than bald contradictions of the evidence offered by the moving party. To conclude otherwise would enable the nonmoving party to avoid summary judgment in every case, crippling the use of Civ.R. 56 as a means to facilitate the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial." *Telecom*

*Acquisition Corp. I v. Lucic Ents., Inc.*, 8th Dist. Cuyahoga No. 102119, 2016-Ohio-1466, ¶ 92, citing *Bank One, N.A. v. Burkey*, 9th Dist. Lorain No. 99 CA007359, 2000 WL 763341 (June 14, 2000).

**{¶ 24}** With respect to RJM's knowledge of the danger, Dalzell did not set forth facts that showed there was a genuine issue of material fact as to whether RJM had breached a duty owed to her. She presented no evidence, other than the self-serving and unspecific affidavit, that RJM or its employees knew or should have known of a defect in the bench and failed to correct or warn Dalzell of it. The trial court did not err in concluding that "reasonable minds may only conclude that [RJM] did not breach any duty of care owed to Ms. Dalzell" and that she had not produced any evidence that RJM "had actual or constructive knowledge of the condition of the picnic table."

**{¶ 25}** Dalzell asserted in her memorandum contra that "it can be demonstrated that the replacement of ½ the benches showed a knowledge of a latent defect." But no other evidence was offered in support of the assertion that any benches or parts thereof had been replaced. The photograph did not support this inference, nor did Dalzell's mother's affidavit corroborate this assertion. Dalzell also attempted to build inference upon inference, suggesting, for example, that RJM's "failure to provide repair and maintenance logs for the table" (logs which RJM stated did not exist) and the need for repairs within one year of purchase supported an inference that "a latent defect might exist." This speculation that a latent defect *might have existed*, unsupported by any evidence, did not create a genuine issue of material fact that RJM had breached a duty to Dalzell.

**{¶ 26}** Most of Dalzell's memorandum contra the motion for summary judgment

focused on ways in which Ratcliff's impact report was inconsistent with the facts alleged by Dalzell and her mother and, by inference, with the assertions contained in Ratcliff's affidavit. Undoubtedly, the impact report is confusing. It is undated, which renders unhelpful its statement that "there hadn't been any other occurrence before or after" related to the picnic benches; the reference to no occurrences "after" the fall described in the impact report also suggests that it was not prepared contemporaneously with the accident. The "female guest" discussed in the report is unnamed, and there is significant disparity between the facts described therein and the facts asserted by Dalzall and her mother (and not otherwise disputed by RJM) about who was present at the time of the fall. Neither party took Ratcliff's deposition or otherwise attempted to clarify these inconsistencies.

{¶ 27} However, who was present at the time of Dalzell's fall is irrelevant to the central question presented by the motion for summary judgment: whether RJM had knowledge, prior to Dalzall's fall, of any defect in or hazard presented by the picnic bench. Even if we were to presume, for the sake of argument, that Ratcliff misstated or was very confused about the facts surrounding Dalzell's fall when she completed the impact report and that her account of the events was inaccurate, such an assumption would not establish the existence of a genuine issue of material fact on the question of RJM's negligence.

{¶ 28} Dalzell further argued in her memorandum and argues on appeal that Ratcliff's affidavit was "presented in bad faith or solely for the purpose of delay," in which circumstance the trial court may order RJM to pay Dalzell's "reasonable expenses * * *, including reasonable attorney's fees" incurred as a result or may find the offending party

in contempt. *See* Civ.R. 56(G). But Dalzell did not file a motion for attorney fees or a finding of contempt in the trial court, nor did she show that the affidavit delayed the proceedings. More importantly, Ratcliff's affidavit did not conflict with the impact report; it did not address any specific facts surrounding Dalzell's fall. The affidavit only addressed the purchase of the picnic tables and benches, their maintenance, and the lack of previous complaints about them. There was no evidence – including in the impact report – to contradict any of the assertions in Ratcliff's affidavit, other than Dalzell's assertion in her affidavit that it appeared parts of the picnic table had been replaced.

{¶ 29} Dalzell argued that "the impact statement is a blatant misrepresentation of the facts to bolster the affidavit." Because the impact report is undated, we cannot know which was written first. However, insofar as the impact report and the affidavit address different issues, we fail to see how one could reasonably be construed as "bolstering" the other.

{¶ 30} In support of her bad faith argument, Dalzell attempts to construe Ratcliff's affidavit statement that, "[p]rior [to] Plaintiff's fall, no defect or dangerous condition had been observed with respect to the picnic table in question" as an assertion on Ratcliff's part that she "had observed the area *immediately* prior" to the fall, i.e., that she was present at the time of the fall. (Emphasis in Dalzell's memorandum contra and brief.) Ratcliff's statement in her affidavit cannot reasonably be interpreted as referring to the moments immediately preceding the fall, especially in light of the general, historic context of all the other statements in her affidavit.

{¶ 31} Based on the evidence presented, there was no reasonable basis to conclude that Ratcliff's affidavit was submitted in bad faith. Moreover, as discussed

above, the discrepancies in the accounts of who was present at the time of the fall have no bearing on whether RJM had prior knowledge that the picnic tables or benches were in a dangerous condition, which is the question relevant to summary judgment.

**{¶ 32}** Finally, Dalzell argues that Ratcliff's impact report suggests that "a *different* customer was injured under similar circumstances," that Ratcliff was present at the time of that incident, and that her affidavit was therefore inadmissible under Civ.R. 56(E) because it was not "made on personal knowledge" of the incident involving Dalzell. (Emphasis sic.) She also claims that the existence of another incident would "clearly contradict" RJM's assertion that it had no knowledge of "a latent defect in the table." Again, we emphasize that Ratcliff's affidavit did not recount any facts specific to Dalzell's fall. Thus, it was not improper for lack of "personal knowledge." The impact report, not the affidavit, contains Ratcliff's questionable account of the events.

**{¶ 33}** Dalzell's contention, somewhat indirectly, that the impact report suggests the occurrence of another person's fall from a picnic table bench at Rudy's Smokehouse is speculative at best. Although this is one *possible* interpretation of the confusing impact report, it is certainly not the only one, and it is too unsubstantiated to create a genuine issue of material fact. Interpreting the impact report in the manner advocated by Dalzell would require us to infer 1) that a separate incident occurred involving the same picnic table benches, 2) that such an incident occurred prior to Dalzell's fall (and thus within the first six months from the picnic table's purchase), and 3) that RJM and Ratcliff lied in their assertions in answers to interrogatories and affidavits, respectively, about the existence of prior accidents or complaints about the same picnic tables and benches. There is no independent evidence in the record to support interpreting the impact report in this

manner.

{¶ 34} A plaintiff cannot rely on stacked inferences to satisfy the requirement to show that there is a genuine issue of material fact for trial. *Haughey v. Twins Group, Inc.*, 2d Dist. Champaign No. 2004-CA-7, 2005-Ohio-1371, ¶ 18, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). *See also Currie v. Big Fat Greek Restaurant, Inc.,* 10th Dist. Franklin No. 12AP-440, 2012-Ohio-6168, ¶ 18 ("It is impermissible to draw an inference from a deduction that is itself purely speculative and unsupported by an established fact. * * * [A party] cannot create a genuine issue of fact by stacking inference upon inference.") Without other evidence, which does not exist in this record, the trial court's summary judgment was proper.

{¶ 35} The assignment of error is overruled.

{¶ 36} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and HALL, J., concur.

Copies mailed to:

Michael T. Edwards
Judd R. Uhl
Patrick B. Healy
Hon. Douglas M. Rastatter