[Cite as *Ibrahim v. Dayton*, 2018-Ohio-1318.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| SANWR IBRAHIM | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 27699 |
| | : | |
| v. | : | Trial Court Case No. 2016-CV-4178 |
| | : | |
| CITY OF DAYTON, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendants-Appellees* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of April, 2018.

. . . . . . . . . . .

EDWARD C. YIM, Atty. Reg. No. 0067168, 130 West Second Street, Suite 2000, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

MARTIN W. GEHRES, Atty. Reg. No. 0096711, and JOHN C. MUSTO, Atty. Reg. No. 0071512, 101 West Third Street, P.O. Box 22, Dayton, Ohio 45402
    Attorneys for Defendants-Appellees

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiff-appellant, Sanwr Ibrahim, appeals from the trial court's decision of July 19, 2017, in which the court granted summary judgment in favor of Defendants-appellees, the City of Dayton and Officer Walter Evans of the Dayton Police Department.[1] Presenting three assignments of error, Ibrahim argues that the trial court received insufficient evidence to support its determination that Appellees are entitled to immunity under R.C. Chapter 2744. We find that the record supports the trial court's determination, and therefore, we affirm.

## I. Facts and Procedural History

{¶ 2} On August 20, 2014, Officer Evans was dispatched to a location in the vicinity of the Reibold Building at 117 South Main Street, Dayton, in response to a report of "a large crowd," possibly armed, "yelling and shouting." Decision, Order & Entry Sustaining Defs.' Mot. for Summ. J. 1, July 19, 2017; Aff. of Walter Evans ¶ 3-6, Apr. 28, 2017.[2] As Officer Evans drove past in his marked police vehicle, a man emerged from the Reibold Building and waved in the officer's direction. *Id.* at ¶ 7-8. Officer Evans interpreted the gesture to mean that the man, whom he took for a security guard, had information about the disturbance to which he was responding, so he "placed [his] vehicle in reverse [gear]

---

[1] The trial court identified Appellant as "Snoor Ibrahim, formerly known as Sanwr Ibrahim," having been prompted by a statement to the same effect made by Appellant herself in her memorandum in opposition to Appellees' motion for summary judgment. Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 1, May 31, 2017; Decision, Order & Entry Sustaining Defs.' Mot. for Summ. J. 1, July 19, 2017. Appellant has referred to herself exclusively as "Sanwr Ibrahim" in her filings before this court, however, and has not requested that the caption be changed.

[2] The trial court did not cite the correct date in its decision. Officer Evans submitted his affidavit as an attachment to Appellees' motion for summary judgment of May 1, 2017.

and backed up at just a few miles per hour," intending to ask about the disturbance. *Id.* at ¶ 8-9. His vehicle moved "two to three feet" backwards and then struck Ibrahim's vehicle. *Id.* at ¶ 10; Dep. of Walter Evans 45:2-45:5, May 31, 2017.[3]

**{¶ 3}** By Officer Evans's account, the accident caused "very minor damage to [his] police [vehicle] and only minor damage to [Ibrahim]'s vehicle." Evans Aff. ¶ 12. Ibrahim herself has not testified, but in his deposition, Officer Evans testified that Ibrahim told him she was unharmed and indicated that she preferred to leave rather than wait for his supervisor to arrive and begin an accident investigation. Evans Dep. 56:15-57:8.

**{¶ 4}** On August 11, 2016, Ibrahim filed a complaint against the City of Dayton and Officer Evans, claiming that Officer Evans's "negligence" caused her "severe and permanent injuries"; "great pain and suffering, both physical and emotional"; "loss of ability to perform usual functions"; "future pain and suffering, both physical and emotional"; "future loss of ability to perform usual functions"; "reasonable and necessary medical expenses in an amount to be determined"; "future reasonable and necessary medical expenses in an amount to be determined"; "loss of wages and earnings in an amount to be determined"; "future loss of wages and earnings in an amount to be determined"; and "property damage in an amount to be determined." Compl. ¶ 5 and 13. Appellees filed a motion for summary judgment on May 1, 2017, to which Ibrahim

---

[3] Ibrahim attached a transcript of Officer Evans's deposition as an unlabeled exhibit to her memorandum in opposition to Appellees' motion for summary judgment. Arguably, the deposition should have been stricken because Ibrahim did not comply with Civ.R. 30(E)-(F) and 31(C), or with Mont. Co. C.P.R. 1.27(A), and Officer Evans neither signed the deposition nor waived signing. *See e.g. Bank of New York Mellon Trust Co. v. Unger*, 8th Dist. Cuyahoga No. 97315, 2012-Ohio-1950, ¶ 40 and 43-46. Nevertheless, Appellees did not move to have the deposition stricken, and any objections to its admission have been waived. *See* Civ.R. 32(D).

responded with a memorandum in opposition on May 31, 2017.[4]

{¶ 5} On July 19, 2017, the trial court issued its decision sustaining Appellees' motion.   Ibrahim timely filed her notice of appeal on August 17, 2017.

## II. Analysis

{¶ 6} For her first assignment of error, Ibrahim argues that:

THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S [sic] MOTION FOR SUMMARY JUDGMENT [by] FINDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER OR NOT OFFICER WALTERS [sic] WAS RESPONDING TO AN EMERGENCY CALL AT THE TIME OF THE ACCIDENT.

{¶ 7} Ibrahim grounds this argument on citations to the record purportedly demonstrating that "at the time of the collision[,] the disturbance [to which Officer Evans was dispatched] had dissipated, and he had reentered the traffic pattern and beg[u]n [a] routine patrol."   Appellant's Br. 14.   Relying on these assumptions, Ibrahim requests that her case be remanded to the trial court for a redetermination of whether the disturbance ended before the accident happened.   *See id.*

{¶ 8} Under Civ.R. 56, summary judgment is proper when: (1) the case presents no genuine dispute as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion, which is adverse to the non-moving party.   *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d

---

[4] The memorandum in opposition is captioned as a "Motion and Memorandum Contra," but the document includes no motion for summary judgment on Ibrahim's behalf.

46 (1978); *Dalzell v. Rudy Mosketti, L.L.C.*, 2d Dist. Clark No. 2015-CA-93, 2016-Ohio-3197, ¶ 5, citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The substantive law of the claim or claims being litigated determines whether a fact is "material." *Herres v. Millwood Homeowners Ass'n, Inc.*, 2d Dist. Montgomery No. 23552, 2010-Ohio-3533, ¶ 21, citing *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶ 9}** Initially, the movant bears the burden of establishing the absence of any genuine issues of material fact. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). The movant may rely only on evidence of the kinds listed in Civ.R. 56(C) for this purpose. *Dalzell*, 2016-Ohio-3197, ¶ 5, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets its burden, then the non-moving party bears a reciprocal burden to establish, as set forth in Civ.R. 56(E), that the case presents one or more genuine issues of fact to be tried. *Id.* at ¶ 6. The non-moving party, in satisfying this requirement, may not rely merely upon the allegations or denials offered in the pleadings, but like the movant, "must be able to point to evidentiary materials of the type listed in Civ.R. 56(C)." *Dresher*, 75 Ohio St.3d at 293, quoting Civ.R. 56(E); *Dalzell*, 2016-Ohio-3197, ¶ 6. On appeal, a trial court's ruling on a motion for summary judgment is reviewed de novo. *Dalzell*, 2016-Ohio-3197, ¶ 6, citing *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42.

**{¶ 10}** Ibrahim's contention that Officer Evans was not responding to an emergency call at the time of the accident implicates the provisions of R.C. 2744.02(B)(1)(a), which establishes that a municipal corporation has a "full defense[]" to liability arising from "the negligent operation of any motor vehicle" by a police officer

"responding to an emergency call," so long as "the operation of the vehicle [does] not constitute willful or wanton misconduct." The term "emergency call," according to R.C. 2744.01(A), means a "call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." Of this nonexhaustive list of examples, "only the third * * * refers to [imminent hazards], thereby indicating that the other listed examples need not involve * * * inherently dangerous situation[s]." *Colbert v. City of Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 14, citing R.C. 2744.01(A), and *State v. Thompson*, 92 Ohio St.3d 584, 588, 752 N.E.2d 276 (2001). The "phrase 'inherently dangerous situations' " thus "places no limitation on the term 'call to duty.' " *Id.*, quoting R.C. 2744.01(A); *see also, e.g.*, *Seege v. Smith*, 2d Dist. Montgomery No. 26210, 2014-Ohio-5450, ¶ 14-18 and 25-27.

{¶ 11} In attempting to demonstrate that Officer Evans was not responding to an "emergency call" as defined by R.C. 2744.01(A), Ibrahim mischaracterizes the record. For instance, citing the trial court's decision and the transcript of Officer Evans's testimony, Ibrahim claims that when the accident occurred, the disturbance that Officer Evans was dispatched to investigate "had [already] dissipated." Appellant's Br. 13, citing Decision, Order & Entry Sustaining Defs.' Mot. for Summ. J. 2, and Evans Dep. 13:1-22:25.[5] The trial court, however, expressly found the opposite, remarking that Officer

---

[5] Ibrahim uses a non-standard citation format based on "Page ID" numbers. These citations are problematic because the cited references do not obviously correspond to the assertions they are presumably intended to support. Page 2 of the trial court's decision, for example, would seem to be irrelevant or directly contradictory to the point for which Ibrahim cited it. The citation to Officer Evans's testimony, which is "RE: Evans Depo.,

Evans's "affidavit[] [and] deposition, [along with] the dispatch records[,] all establish that [he] was dispatched to and was responding to a disturbance call at the time the accident occurred." (Emphasis added.) Decision, Order & Entry Sustaining Defs.' Mot. for Summ. J. 4. Officer Evans, for that matter, testified unambiguously that the disturbance had not ended when he saw the security guard emerge from the Reibold Building. Evans Dep. 29:12-36:7; *see also* Evans Aff. ¶ 8-9. Asked what the group of people causing the disturbance was doing "[a]t the time [he] saw the security guard," Officer Evans answered that they were "a usual group" who were "always very loud, always causing some kind of a disturbance[,] and that's what they were doing then." Evans Dep. 36:1-36:7.

{¶ 12} Ibrahim has not shown that this case presents a genuine dispute of material fact on the question of whether, at the time the accident occurred, Officer Evans was responding to an emergency call. Officer Evans's affidavit and deposition testimony consistently indicate that the accident occurred almost simultaneously with his arrival at the scene of the disturbance, and Ibrahim has not provided any summary judgment evidence to the contrary. At the moment his police vehicle struck Ibrahim's vehicle, Officer Evans was, in fact, actively investigating the situation by attempting to make contact with a person whom he reasonably believed to have information about the disturbance. Although the record also suggests that the disturbance did not pose any inherent danger, an "emergency call" for purposes of R.C. 2744.01(A) need not be inherently dangerous. Ibrahim's first assignment of error is overruled.

---

Page ID #34; 13-22," is likewise inapposite. Neither the testimony given by Officer Evans between Pages 13 and 22, nor the testimony given by the officer on Page 34, offers any insight into whether the disturbance ended before or after he arrived at the Reibold Building. *See* Evans Dep. 12:18-22:25 and 34:1-34:25.

{¶ **13**} For her second assignment of error, Ibrahim argues that:

THE TRIAL COURT ERRED IN GRANTING THE CITY OF DAYTON IMMUNITY UNDER []R.C[.] * * * 2744.02(A).

{¶ **14**} Ibrahim posits that because the evidence on record gives rise to a "genuine issue of material fact as to whether Officer Evans['s] [actions] constituted willful, wanton, or reckless conduct," the trial court should not have held that the City of Dayton is entitled to immunity pursuant to R.C. 2744.02(A)(1). Appellant's Br. 14. This argument implicates the exception to municipal immunity established by R.C. 2744.02(B)(1)(a), under which a municipal corporation is not liable for injury to person or property allegedly caused by any act or omission of a "member of [its] police department * * * operating a motor vehicle while responding to an emergency call," unless the "operation of the vehicle * * * constitute[s] willful or wanton misconduct."

{¶ **15**} Determining "whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis." *Colbert v. City of Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7, citing *Greene County Agric. Soc'y v. Liming*, 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000). The first tier "is the general rule that a political subdivision is immune from liability incurred in performing either a governmental * * * [or] proprietary function." *Id.*, citing R.C. 2744.02(A)(1), and *Greene County Agric. Soc'y*, 89 Ohio St.3d at 556-557. The second tier "of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply." (Citation omitted.) *Id.* at ¶ 8. If the subdivision would be liable under R.C. 2744.02(B), then the third tier of the analysis requires a review of the defenses to liability set forth in R.C. 2744.03. *See id.* at ¶ 9.

Here, Officer Evans was performing a "governmental function" as that term is defined by R.C. 2744.01(C)(2). The City of Dayton would thus be liable to Ibrahim under R.C. 2744.02(B)(1)(a) if Officer Evans's conduct were "willful or wanton."

{¶ 16} The terms "willful" and "wanton" delineate "distinct degrees of care and are not interchangeable." *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-11, 983 N.E.2d 266, ¶ 31. Willful misconduct "implies an intentional deviation from a clear duty or from a definite rule of conduct," a "deliberate purpose not to discharge some duty necessary to safety," or a purpose to engage in "wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Id.* at paragraph two of the syllabus. Wanton misconduct, on the other hand, "is the failure to exercise any care [for] those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* at paragraph three of the syllabus.

{¶ 17} Ibrahim concedes that Officer Evans's actions did "not rise to the level of willful misconduct," instead maintaining that his actions amount to wanton misconduct because he "did not use any care in the operation of his police [vehicle] at the time of the accident," faulting him specifically for reversing his vehicle "without checking his mirrors or activating [the vehicle's] lights or siren." Appellant's Br. 17. Yet, the only evidence on record shows that Officer Evans reversed his vehicle "at just a few miles per hour" and drove backwards merely "two to three feet" when the accident occurred. Under the circumstances, we cannot conclude that this presented a great probability of harm to others, and the low speed at which the officer reversed his vehicle represents at least a modicum of care. Evans Aff. ¶ 8-9; Evans Dep. 45:2-45:5; *compare with Seege v. Smith*, 2d Dist. Montgomery No. 26210, 2014-Ohio-5450, ¶ 29-30.

{¶ 18} Ibrahim suggests that Officer Evans "was only traveling at such a low [speed] because he had just abruptly changed directions," implying that he would have driven faster if he had had sufficient space, but this is nothing more than speculation. Appellant's Br. 17-18. The record includes no evidence contradicting Officer Evans's sworn testimony that he reversed his vehicle for a very short distance at a very low speed, and we find accordingly that the record does not give rise to any genuine dispute of material fact on the question of whether Officer Evans's operation of his vehicle was willful or wanton. Given that we have already determined the officer was responding to an emergency call at the time of the accident, we find further that the trial court did not err by holding that the City of Dayton is entitled to immunity pursuant to R.C. 2744.02(B)(1)(a). Ibrahim's second assignment of error is overruled.

{¶ 19} For her third assignment of error, Ibrahim argues that:

THE TRIAL COURT ERRED IN FINDING THAT OFFICER EVANS

IS ENTITLED TO IMMUNITY UNDER []R.C. * * * 2744.03(A).

{¶ 20} Finally, Ibrahim contends that Officer Evans's actions "constituted wanton and reckless conduct," subjecting him to personal liability. Appellant's Br. 18. This contention implicates the provisions of R.C. 2744.03(A)(6)(b), under which an employee of a political subdivision "is immune from liability unless * * * [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." For individual employees, this statute controls the immunity analysis, and the foregoing three-tiered analysis is inapplicable. *Rankin v. Cuyahoga County Dep't of Children and Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 36.

{¶ 21} The term "wanton," as noted above, means a "failure to exercise any care

[for] those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-11, 983 N.E.2d 266, paragraph three of the syllabus; *see also Rankin*, 2008-Ohio-2567, ¶ 36-37. Similarly, the term "reckless" refers to a "conscious disregard of[,] or indifference to[,] a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially [more remiss] than negligent conduct." *See Anderson*, 2012-Ohio-11, ¶ 34; *see also Rankin*, 2008-Ohio-2567, ¶ 36-37.

{¶ 22} We have already found that Officer Evans's operation of his police vehicle at the time of the accident did not constitute wanton conduct. In light of the "high standard" required to make a showing of recklessness, we hold likewise that Officer Evans did not act recklessly. *Rankin*, 2008-Ohio-2567, ¶ 37. Arguably, Officer Evans consciously disregarded the obvious risk that he would back into another vehicle behind his own—which is exactly what happened. Nevertheless, at very low speed, an accident of this sort did not present a "risk of harm to another that [was] unreasonable under the circumstances," and the officer's likely failure to check his rear-view mirrors, though hardly above criticism, was not so egregious that it can fairly be said to be "substantially [worse] than negligen[ce]."[6] *Anderson*, 2012-Ohio-11, ¶ 34; *see also Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 7-8.

{¶ 23} Ibrahim has not demonstrated that this case presents a genuine dispute of material fact on the question of whether Officer Evans operated his police vehicle

---

[6] Officer Evans testified that he could not remember whether he checked his rear-view mirrors before reversing his vehicle, but he also testified that he would not have reversed his vehicle had he seen anything behind it. Evans Dep. 45:6-46:12; *see also* Evans Aff. ¶ 10.

wantonly or recklessly at the time of the accident. Hence, the trial court did not err by holding that Officer Evans is entitled to immunity under R.C. 2744.03(A)(6)(a). Ibrahim's third assignment of error is overruled.

### III. Conclusion

**{¶ 24}** On our de novo review, we find that Ibrahim has not met her burden to show that this case presents a genuine issue of material fact on the questions of whether Officer Evans was responding to an emergency call at the time of the accident, or whether Officer Evans's operation of his police vehicle was willful, wanton or reckless. Therefore, Ibrahim's assignments of error are overruled, and the trial court's decision of July 19, 2017, is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies mailed to:

Edward C. Yim
Martin W. Gehres
John C. Musto
Hon. Barbara P. Gorman