NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0890n.06
Filed: December 12, 2006

No. 05-4598

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES PERRY CONLEY, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |

**BEFORE:** **DAUGHTREY and COLE, Circuit Judges; RESTANI, Judge.**[*]

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-Appellant James Perry Conley appeals the

district court's grant of summary judgment in favor of his former employer, Defendant-Appellee

U.S. Bank National Association ("USB"). Conley claimed that USB violated the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (2006), Ohio Revised Code Chapter

4112, and Ohio public policy by improperly discriminating against him based on his age when USB

terminated his employment as part of a reduction in its workforce. The district court held that (1)

Conley failed to establish a prima facie case of age discrimination, and (2) even assuming he

established a prima facie case, he failed to show USB's proffered reason for the termination was a

pretext for discrimination. We **AFFIRM** the district court's order granting USB's motion for

---

[*]The Honorable Jane A. Restani, Chief Judge of the United States Court of International
Trade, sitting by designation.

summary judgment.

## I. BACKGROUND

### A. Facts

In May 1998, USB hired Conley as a relationship manager in its Institutional Trust Department ("Trust Department"). In the fall of 2002, USB management ordered a ten-percent cost reduction in the Trust Department. Larry Fish, the Trust Department manager, reviewed the options available to accomplish this cost reduction, and he decided that job cuts were the only means to do so.

Generally, when USB reduces its workforce, it uses a Peer-Group Analysis ("PGA") to decide which positions to eliminate within a given class of employees. This procedure involves scoring job-related criteria on a form, and its purpose is to ensure that the most-qualified and effective employees are retained. Fish used the PGA procedure with three classes of employees in the Trust Department: (1) relationship managers (including Conley); (2) account managers; and (3) employee-education specialists. Before completing the PGA forms, Fish first met with and collected input from the managers who reported to him about whom they believed should be terminated in each class. They all suggested Conley should be the relationship manager eliminated. In making their recommendations, these managers did not rely on the PGA forms or criteria. Fish used this input in conjunction with his own experience with the employees to complete the PGA forms.

Fish eliminated the lowest-scoring employee in each class. Conley received the lowest score among relationship managers, even though he received three extra points because he was more than

forty years old. In December 2002, when Conley was fifty-eight years old, USB informed him it was terminating his job effective January 15, 2003, as part of the reduction in force. USB admits that Conley met the qualifications for the job and had performed his job satisfactorily. After the reduction in force, the ages of the remaining relationship managers were fifty-five (two people), forty-eight (two people), forty-three, forty-two, forty-one, and thirty-seven.

In addition to Conley, the low-scoring employees from the other job classes were also terminated. In the account-manager class, the low scorer was forty-year-old Eileen Riesenbeck; the remaining account managers were ages fifty-one, forty-nine (two people), forty-seven, forty-one, thirty-nine (two people), thirty-six, thirty-five, and twenty-four. In the employee-education-specialist class, the low scorer was thirty-two-year-old Mary Wilson; the remaining employee-education specialist, Kyle Erion, was twenty-five.

In early 2003, after the reduction in force, USB began another reorganization of the Trust Department. Fish began to work on new staffing models, which included outsourcing account-manager positions and creating a new relationship-manager position. USB developed these models between March and May 2003. After these models were in place, USB considered employee-education specialist Erion for the new relationship-manager position. Erion received the promotion effective August 2003.

**B. Procedural History**

Conley brought suit in the district court alleging that USB violated the ADEA, Ohio Revised Code Chapter 4112, and Ohio public policy by discriminating against him based on his age when it terminated his employment. On October 4, 2005, the district court issued an order granting USB's

motion for summary judgment, holding that (1) Conley failed to establish a prima facie case of age discrimination, and (2) even assuming he established a prima facie case, he failed to show USB's proffered reason for the termination (workforce reduction) was a pretext for discrimination. Conley now appeals that order.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although all "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), summary judgment must be entered against the opposing party if it "fails to make a showing sufficient to establish the existence of an element essential to . . . [its] case, and on which . . . [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court reviews de novo the grant of summary judgment. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc).

### B. Merits

#### 1. ADEA Claim

The ADEA prohibits an employer from discharging older employees on the basis of their age. 29 U.S.C. § 623(a); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en

banc). An employee may establish a claim under the ADEA by offering either direct or circumstantial evidence of age discrimination. *Wexler*, 317 F.3d at 570. Direct evidence of discrimination is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Id.* Circumstantial evidence, on the other hand, is proof that does not, on its face, establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred. *Id.* Conley relies on circumstantial evidence in this case.

The Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), sets forth a general analytical method for examining discrimination claims based on circumstantial evidence. *See Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998); *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1464 (6th Cir. 1990). First, the plaintiff has the burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. *Barnes*, 896 F.2d at 1464. Second, if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* Third, should the defendant carry this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons the defendant offered were not its true reasons, but were a pretext for discrimination. *Id.*

a. *Prima Facie Case*

The *McDonnell Douglas* decision provides the four elements a plaintiff generally must prove to establish a prima facie case of discrimination: (1) he or she was part of a protected class (i.e., age forty or over); (2) he or she was qualified to perform the job; (3) he or she was discharged; and (4)

the employer replaced him or her with a younger individual. *See Scott*, 160 F.3d at 1126 (citing *McDonnell Douglas*, 411 U.S. at 802). The analysis differs, however, in cases, such as this one, that involve a workforce reduction. *Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767 (6th Cir. 2004) (citing *Barnes*, 896 F.2d at 1465). In that context, the plaintiff must prove the first three elements and also produce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.* at 768 (quoting *Barnes*, 896 F.2d at 1465). "The guiding principle [in a reduction-in-force case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id.* at 767-68 (quoting *Barnes*, 896 F.2d at 1466). USB does not dispute that Conley meets the first three requirements for establishing a prima facie case. At issue therefore is whether Conley has shown sufficient additional direct, circumstantial, or statistical evidence of age discrimination. Conley contends he provided three types of evidence that, when considered together, suffice for a jury to infer discrimination.

First, Conley asserts that his supervisors made ageist comments. The supervisors' comments included that Conley "lacked initiative," "was just putting in his time . . . [and] not setting the world on fire," and was not a "go-getter." (Joint Appendix ("JA") 352, 357, 481-82.)

Second, Conley argues that USB treated younger, similarly situated employees more favorably. He first argues that this is evident in the PGA results for the ten relationship managers: out of a possible 118 points, those below age forty averaged 86 points; those between age forty and fifty averaged 84.6 points; and those over age fifty averaged 71 points. Conley further points out that Fish completed Conley's PGA by relying on others' impressions of Conley while ignoring

performance reviews, sales data, and objective documentation. Conley also notes there are disparities between his scores in particular categories of the PGA and those of other relationship managers who performed similarly. For example, although Conley's sales were similar to those of a younger relationship manager over the twelve-month period before the PGA was completed, Conley received a sales score of two (out of a maximum of six), and the younger relationship manager received a score of four. Additionally, although Conley's client losses were similar to two younger relationship managers, Conley received a client-retention score of two, but those other relationship managers received a score of four. Moreover, Fish miscalculated three of the total scores on the PGAs: Conley's total was two points lower than it should have been, and two younger employees' totals were two points higher than they should have been. Conley also argues that USB's disparate treatment of older employees is evident in supervisors' apparent favoritism toward younger relationship managers; he testified, for example, that he never saw older employees receiving supervisory roles.

Third, Conley contends discrimination can be inferred from the promotion of the substantially younger Kyle Erion to relationship manager four months after Conley's termination.

This evidence falls short of establishing a prima facie case of age discrimination. The district court was correct to note that what Conley refers to as his supervisors' "ageist" comments do not actually refer to Conley's age; rather, they were made "merely to indicate performance-based impressions, [and] could apply to an employee of any age." *Conley v. U.S. Bank Nat'l Ass'n* (*Conley I*), No. 1:03cv495, 2005 U.S. Dist. LEXIS 22370, at *12 (S.D. Ohio Oct. 4, 2005). This case is therefore distinguishable from those Conley relies on, in which comments were made that referenced

age. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (noting plaintiff was told he was "too damn old to do his job"); *Wexler*, 317 F.3d at 571 (noting plaintiff received numerous age-related comments, including that plaintiff was a "grumpy old man"); *cf. Johnson v. Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003) (holding plaintiff showed prima facie case of race discrimination where there was evidence of racial jokes and slurs). Conley also relies on *O'Cull v. Deerfield Manufacturing, Inc.*, No. C-1-02-557, slip op. at 14 (S.D. Ohio May 3, 2004), where the plaintiff mechanic established a prima facie case based on evidence that included comments that the plaintiff "lacked a sense of urgency," was "lackadaisical," and "was observed on many occasions with a coffee mug in his hand walking slowly through the plant." These comments, although not directly referencing age and therefore similar to those about Conley, are still more likely derived from age-based stereotypes of physical traits than the comments here, such as statements that Conley was not a "go-getter." In short, the comments Conley complains of have little, if any, probative value.

The district court also properly disposed of Conley's arguments regarding disparate treatment. The court explained that (1) Conley's statistics regarding the PGA results had no value because the sample size (ten relationship managers) was too small; and (2) Fish's process of meeting with management staff for their input and filling in the PGA forms without reviewing performance data "did nothing procedurally [that] treated non-protected employees better"—indeed, those over forty received three extra points on the PGA. *Conley I*, 2005 U.S. Dist. LEXIS 22370, at *12. The district court was correct that this small sample size gives Conley's statistics little or no probative

value. *See Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 943 n.7 (6th Cir. 1987) ("A number of courts have recognized that small statistical samples provide little or no probative force to show discrimination.") (citations omitted). And although we recognize that subjective evaluation processes provide "ready mechanisms for discrimination," *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 461 (6th Cir. 2004) (citation omitted), the few, small discrepancies Conley points to in certain categories of the PGA scores are not "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against [him] because of age." *Gragg*, 373 F.3d at 767-68 (quoting *Barnes*, 896 F.3d at 1466).

Finally, the alleged replacement of Conley by the younger Erion does not add enough to meet the prima facie case. After terminating Conley, USB divided his duties between two other employees. Erion was promoted to relationship manager six months later, and Erion was not assigned the same duties as Conley. Moreover, USB management, including Fish, did not determine that it would need additional relationship managers until the second restructuring in 2003, after Conley's termination.

In sum, the comments, statistics, and alleged replacement fail to establish a prima facie case: they do not allow a reasonable factfinder to conclude that USB "singled out" Conley because of his age. *See Gragg*, 373 F.3d at 767 (quoting *Barnes*, 896 F.2d at 1465).

b. *Pretext*

Additionally, USB is entitled to summary judgment because Conley cannot show that the reason USB offered for discharging him—a department-wide reduction in force to cut costs by

eliminating the least-effective employees—was a pretext for discrimination.[1]  A plaintiff can refute

the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment

action by showing that the proffered reason (1) has no basis in fact; (2) did not actually motivate the

defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct.  *Wexler*,

317 F.3d at 576 (citation omitted).  Conley contends that three grounds establish pretext here: (1)

USB offered inconsistent statements regarding the reason for his termination; (2) Conley was not the

least-effective relationship manager; and (3) USB failed to follow the PGA procedure when

determining whose jobs to eliminate.  The district court correctly concluded that these grounds fail

to establish USB's proffered reason for terminating Conley was pretextual.

Conley first argues that USB's reasons for his termination were inconsistent because his

supervisors "disagree as to how much of a factor" his performance was in his termination.  There

is no serious disagreement, however, that Fish analyzed job performance, skills, experience, and

education for each relationship manager, and he eliminated Conley because he scored the lowest.

Regardless of the various ways in which different supervisors might describe this situation, this is

not a case, like those Conley relies on, in which the defendant plainly changed its proffered reason

for termination.  *See, e.g., DeLoach v. Island Dental Co.,* No. 1:04-CF-00207, 2005 WL 3533145,

at \*7 (S.D. Ohio Dec. 22, 2005) (noting employer first relied on plaintiff's poor performance but

then argued at summary judgment that reason for termination was her inability to learn computer

---

[1]Conley does not dispute that USB has offered a legitimate, nondiscriminatory reason for his discharge, so USB meets its burden under the second part of the *McDonnell Douglas* framework.

system).

Next, Conley contends that USB's reasons for terminating him are pretextual because he was not the least-effective relationship manager. The focus of his argument is that he was a qualified employee who performed well: he showed effective client communications; was never disciplined for any deficiencies; received performance-based bonuses and salary increases; and improved USB's business by attracting new clients. But the question is not whether Conley was an effective employee; indeed, USB admits he was. *Cf. Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir. 1997) ("In a [reduction in force], qualified employees are going to be discharged.") (quoting *Barnes*, 896 F.2d at 1466). USB determined, however, that he was the least-effective relationship manager *relative* to the others. To counter this, Conley argues that his PGA score was "actually higher" than Erion's, thus showing Conley was more effective. This argument suffers two flaws: (1) Erion was not a relationship manager (he was an employee-education specialist), so Erion's PGA says nothing about whether Conley was the least-effective relationship manager; and (2) the two positions were evaluated using different criteria and different scoring—the highest score Conley could receive as a relationship manager was 118 points, and the highest Erion could receive as an employee-education specialist was 82 points. Conley also asserts that he "rated near the top" as a relationship manager, but this was based on his own self-evaluation. In contrast, Fish's 2002 evaluation of Conley gave him a score of three on a scale of one to five—lower than three relationship managers and the same as the remaining six. And in 2001, Fish ranked Conley last among Trust Department employees at his grade level. Conley's subjective views of his performance fail to show pretext. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th

Cir. 1990) (noting employee's disagreement with employer's evaluation of him does not raise material issue of fact); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (stating that when assessing work performance, it "is the perception of the decision maker [that] is relevant, not the self-assessment of the plaintiff").

Finally, the subjective nature of the PGA and the discrepancies in certain of its scoring categories fail to support a reasonable inference that USB's reason for terminating Conley was based on age and not on a legitimate need to cut costs by removing the least-effective relationship manager. First, Conley's PGA score, even when corrected to sixty-one, was significantly lower than all others in his class; the second-lowest score was seventy-three. Second, a fifty-five-year-old relationship manager (just three years younger than Conley) scored high at eighty-one points. Finally, the lowest-scoring account manager, who was also terminated, was younger than five of the eleven people in that department.

Without more, these facts lead to the conclusion that USB simply terminated low-scoring employees without regard to age. *See, e.g., Hedrick*, 355 F.3d at 461 (holding that plaintiff failed to show employer's assertion that it chose better-qualified candidates was pretextual). Moreover, even if Fish's assessment of Conley was erroneous or wrong, it was not illegal, because there is insufficient evidence to link the assessment to Conley's age. *See Evers v. Alliant Techsys., Inc.*, 241 F.3d 948, 959 (8th Cir. 2001) (holding that it is not unlawful for an employer to make erroneous evaluations); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) (holding that it is not unlawful for an employer to make unwise business judgments, use a faulty evaluation system, or do a poor job of selecting employees). Conley therefore fails to state an ADEA claim.

2. State-Law Claims

Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis. *Ergcegovich v. Goodyear Tire & Rubber Co.*,154 F.3d 344, 357 (6th Cir. 1998). Because summary judgment is proper on Conley's ADEA claim, his claim under O.R.C. § 4112.02 also fails. Additionally, the public policy against age discrimination embodied in the ADEA is also embodied in O.R.C. § 4112.02. Summary judgment therefore is also appropriate on Conley's public-policy claim. *See Jones v. Kilbourne Med. Labs.,* 162 F. Supp. 2d 813, 831 (S.D. Ohio 2000).

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of USB.