[Cite as *Saunders v. Greater Dayton Regional Transit Auth.*, 2021-Ohio-3052.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| SELENA R. SAUNDERS | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28942 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-4965 |
| | : | |
| GREATER DAYTON REGIONAL | : | (Civil Appeal from |
| TRANSIT AUTHORITY | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of September, 2021.

. . . . . . . . . . .

JULIUS L. CARTER, Atty. Reg. No. 0084170, 10 West Second Street, Suite 2229, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

MATTHEW L. ROBERTS, Atty. Reg. No. 0079938 and RYAN A. CATES, Atty. Reg. No. 0085496, 200 Civic Center Drive, Suite 1200, Columbus, Ohio 43215
    Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Plaintiff-appellant, Selena R. Saunders, appeals from the trial court's final order of September 25, 2020, in which the court entered judgment under Civ.R. 56 in favor of Defendant-appellee, the Greater Dayton Regional Transit Authority ("RTA"). Raising one assignment of error, Saunders argues that the trial court erred by entering summary judgment in RTA's favor because RTA did not meet its burden to demonstrate the absence of any genuine issues of material fact regarding Saunders's claims for sex discrimination, disability discrimination, and retaliation.

**{¶ 2}** We find that the trial court erred by granting RTA summary judgment on Saunders's claim for sex discrimination. Saunders presented sufficient evidence to give rise to a genuine dispute of fact on the question of whether RTA sanctioned Saunders under its policy of progressive discipline for a violation of its rules more severely than it sanctioned three similarly situated male employees, who were found to have committed comparable violations. Regarding Saunders's remaining claims, however, we find that the trial court did not err. Therefore, the trial court's final order of September 25, 2020, is reversed in part as it relates to Saunders's claim for sex discrimination, and it is affirmed in part.

## I. Facts and Procedural History

**{¶ 3}** Saunders, an African-American woman, began working for RTA as a bus driver in December 2000. Complaint ¶ 8; Appellant's Brief 7; *see also* Appellee's Brief 2-3. She took the position subject to a collective bargaining agreement between RTA and the Amalgamated Transit Union, Local 1385 ("ATU"). *See* Decision, Order and Entry Sustaining Defendant's Motion for Summary Judgment 1-2, Sept. 25, 2020

[hereinafter *Judgment Entry*]; *see also* Appellant's Brief 10-11.

{¶ 4} On November 6, 2010, Saunders berated an unruly passenger during a stop at Wright Stop Plaza.   Appellant's Brief 9-10; Appellee's Brief 3-4.   En route to the plaza, the passenger "had made an offhand comment" that upset Saunders, and when the bus reached the plaza, the passenger walked from the back of the bus to exit through the forward doors, "essentially ready to fight."   Deposition of Selena R. Saunders 35:20-36:4, Aug. 2, 2018 [hereinafter *Saunders Deposition*]. [1]   In the midst of the ensuing disagreement, Saunders followed the passenger off the bus, vituperated the passenger in profane terms, made a demeaning comment about the passenger's sexual identity, and invited the passenger to have a physical altercation with her.   *See id.* at 35:20-37:3; Deposition of Delbera Crutcher, Exhibit 25, Aug. 8, 2018 [hereinafter *Second Crutcher Deposition*]; *see also* Appellant's Brief 9-10.

{¶ 5} Saunders afterward received a "Group Two" citation pursuant to "Standards of Excellence," the policy of progressive discipline in effect at the time of the incident. Delbera Crutcher Affidavit ¶ 7 and Exhibit B, Jan. 17, 2019;[2]   Deposition of Mark Donaghy 30:14-31:6 and 67:13-68:4, Nov. 2, 2018.   In a list consisting of 23 entries, more than 40 acts and omissions were classified as Group Two violations.   *See* Crutcher Affidavit,

---

[1] RTA attached discontinuous portions of the transcript of Saunders's deposition of August 2, 2018, along with a series of exhibits to the deposition, as Exhibit "1" to its motion for summary judgment.

[2] RTA attached Crutcher's affidavit to its motion for summary judgment as Exhibit "2." The preceding exhibit comprises excerpts from Saunders's deposition of August 2, 2018, along with a series of exhibits to the deposition, collectively designated Exhibit "1." Crutcher's given name is "Delbera," but she prefers to be addressed as "Dale." Deposition of Delbera Crutcher 4:9-4:15, August 7, 2018.

Exhibit B.   An employee cited for a Group 2 violation, even if it were the employee's first Group 2 violation, could "be reprimanded, suspended, or * * * discharged * * *, depending on the severity of the infraction."   *Id.*

**{¶ 6}** The citation issued to Saunders charged her with a violation under Group Two, Number 23: "[o]ther conduct of a serious nature not in the best interest of the RTA."[3] Saunders Deposition, Exhibit 6; Crutcher Affidavit, Exhibit B.   After a hearing in which Saunders and a representative of ATU participated, RTA found that Saunders's behavior was a violation of "Group 2 #23" of Standards of Excellence and "also a violation of [RTA's] Violence in the Workplace Policy and [its] Sexual Harassment Policy."[4] Saunders Deposition, Exhibit 7.   Saunders was suspended for 30 days, from December 9, 2010, through January 8, 2011.   *Id.*   At the conclusion of the interoffice memorandum notifying Saunders of her suspension, RTA "advised [her] that [the suspension was her] final and last warning with respect to [her] [c]ustomer [s]ervice."   *Id.*

**{¶ 7}** On February 5, 2011, Saunders apparently struck a wooden utility pole while driving an RTA bus and did not report the incident.   Judgment Entry 2-3; Appellee's Brief 5; Saunders Deposition, Exhibit 10; *see also* Appellant's Brief 8.   Saunders maintained that she was unaware of any impact, but RTA cited her for a violation of Group Two, Number 15 of Standards of Excellence: "Leaving the scene of an accident without

---

[3] The phrase "[o]ther conduct" referred to acts and omissions that were not specifically described in Group Two, Numbers 1 through 22.   *See* Crutcher Affidavit, Exhibit B.

[4] The "Sexual Harassment Policy" is not documented in the record.   *See* Donaghy Deposition 77:3-77:9.   A copy of the "Violence in the Workplace Policy" is attached to Crutcher's affidavit as Exhibit "F."   It indicates that it took effect on July 10, 1998, and that it was revised on February 16, 2001.   Crutcher Affidavit, Exhibit F.

notifying [RTA]." Saunders Deposition, Exhibit 11; Crutcher Affidavit, Exhibit B. Following a hearing on February 23, 2011, RTA informed Saunders that it would "not tolerate [her] continued disregard for [its] Standards of Excellence and [its] commitment to safety, public trust, quality customer service and professional integrity," and it terminated her employment "effective Monday, February 28, 2011." Saunders Deposition, Exhibit 11.

{¶ 8} Saunders challenged her termination by filing a grievance on August 10, 2011, pursuant to the collective bargaining agreement between RTA and ATU. Judgment Entry 3. In a decision dated "Januarys [sic], 2012," the American Arbitration Association determined that RTA's "discharge of * * * Saunders was not for just cause," and it therefore sustained her grievance. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit 67, Aug. 14, 2020. As a result, the arbitrator directed RTA to reinstate Saunders "at or before the beginning of the first regularly scheduled work[-]week on or after Sunday, January 22, 2012," to pay her "all straight-time wages that she would have earned had she not been [unfairly] discharged," and to reimburse her for "any out-of-pocket medical expenses" that would have been "covered by [RTA's] Sickness and Group Sickness and Accident Protection Plan." *See id.*

{¶ 9} Saunders had also filed a charge of sex discrimination with the Ohio Civil Rights Commission. Judgment Entry 3. The Ohio Civil Rights Commission issued a determination letter on April 26, 2012, in which it found probable cause "to believe that [RTA had] engaged in an unlawful discriminatory practice [by] subject[ing] [Saunders] to discipline, including termination[,] which was substantially harsher than that [meted out]

to similarly situated male co-workers." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit 68.

{¶ 10} Beginning in 2010 and continuing throughout 2013, Saunders attended nursing school at Kettering College. Appellant's Brief 13; Saunders Deposition, Exhibits 23 and 25; *see also* Judgment Entry 4. She compensated for conflicts between her class schedule and her work schedule by trading shifts with other bus drivers and by using leave time, but she seems to have struggled intermittently to balance the demands of her position at RTA with the demands of her studies. *See* Judgment Entry 4; Saunders Deposition, Exhibit 19. RTA issued attendance-related reprimands to Saunders on February 13, 2013; April 6, 2013; and June 18, 2013. Saunders Deposition, Exhibit 19. The last of these reprimands was a "[f]inal [w]ritten [w]arning." *Id.*

{¶ 11} With the start of the fall semester approaching, Saunders applied for leave under the Family and Medical Leave Act ("FMLA") on or about August 27, 2013. *Id.* She requested continuous leave from September 1, 2013, to October 1, 2013, as the result of "difficulty concentrating and driving," which her physician attributed to anxiety and depression. Saunders Deposition, Exhibit 26. RTA approved the request. Judgment Entry 4.

{¶ 12} Nevertheless, in September 2013, RTA began an inquiry into Saunders's use of leave, prompted by unspecified "reports that [she] had requested sick leave because of a busy schedule at nursing school." Appellee's Brief 16. The investigation included surveillance of Saunders by private investigators who observed her driving her own vehicle and attending classes during what would have been her regularly scheduled work shifts. Judgment Entry 4; Deposition of Brandon Policicchio 46:9-48:17, Exhibits

12-16, Oct. 31, 2018; *see also* Second Crutcher Deposition, Exhibits 52 and 58.

{¶ 13} On or about September 20, 2013, Saunders requested that her leave be extended to November 1, 2013. Saunders Deposition, Exhibit 31. RTA approved the request, but on several occasions in the first half of October 2013, it asked to meet with Saunders to discuss her use of leave. Appellee's Brief 17; *see* Saunders Deposition, Exhibits 33-34 and 40; Second Crutcher Deposition, Exhibit 45. Saunders refused. *See* Second Crutcher Deposition, Exhibits 42-43 and 45.

{¶ 14} RTA received a telephone call on October 31, 2013, from an anonymous tipster who reported that one or more members of her family, or perhaps she herself, had overheard Saunders "bragging * * * in public" about taking "mental leave of absences [sic]" so that "she [could] finish nursing school" while receiving her usual wage from RTA.[5] *See* Second Crutcher Deposition, Exhibits 46 and 48; *see also* Appellee's Brief 17. Saunders apparently applied for another extension of her leave on November 8, 2013, and RTA informed her on November 20, 2013, that it denied the request because she

---

[5] RTA misrepresents the content of the tip in its brief, stating that the tipster "said [that] she [had] overheard Saunders 'bragging.' " (Emphasis added.) Appellee's Brief 17, quoting Second Crutcher Deposition, Exhibit 46. Yet, the transcript of the tipster's telephone call indicates that the tipster said, "I—uh—my family had just been on the bus and overheard talking so [sic]." (Emphasis added.) Second Crutcher Deposition, Exhibit 46. RTA complains that, in her brief, "Saunders incorrectly claims * * * that [it] found video footage which disproved the anonymous [tip]." Appellee's Brief 17, fn. 9. Rather than claiming that the footage "disproved" the tip, Saunders stated that the footage "verified that [she] never made a statement remotely like that alleged." Appellant's Brief 27. RTA itself acknowledges that it "did not find any" video evidence "related to the [tip]." Appellee's Brief 17, fn. 9. The caller, however, stated only that Saunders had been bragging "in public" and did not specify whether she, or one or more members of her family, who had "just been on the bus," had "overheard talking" while on the bus, before boarding the bus, or after exiting the bus. (Emphasis added.) Second Crutcher Deposition, Exhibit 46.

had "exhausted all [of her] available FMLA hours." Saunders Deposition, Exhibit 42. In the same correspondence, RTA advised Saunders that it had "scheduled * * * a predetermination meeting on Monday, November 25, 2013." *Id.* Saunders did not attend, but her physician submitted a letter, dated November 26, 2013, asking that she be "[e]xcuse[d] * * * from work until further notice." *Id.* at Exhibits 45-46.

{¶ 15} On December 3, 2013, RTA notified Saunders that it had rescheduled the predetermination meeting for December 6, 2013. *Id.* at Exhibit 46. Saunders responded in a letter dated December 6, 2013, explaining that in her opinion, RTA was effectively "requesting that [she] return to work" by asking her to appear for the meeting, and she indicated that she would not appear because she was "unable to return to work at [that] time." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit 48. *Id.* Despite her refusing to attend the meeting, she offered "to submit to an examination by [an RTA] physician." *Id.* She also denied that she had "misus[ed] FMLA leave, or any other form of leave, to attend to personal matters or to attend nursing school." *Id.*

{¶ 16} Unsatisfied, RTA terminated Saunders's employment effective December 16, 2013. Second Crutcher Deposition, Exhibit 63. Two days later, Saunders's physician submitted a letter stating that Saunders was fit to "return to work without restrictions." Saunders Deposition, Exhibit 49.

{¶ 17} ATU filed a grievance on December 20, 2013. *See* Saunders Deposition, Exhibit 53. The matter proceeded to arbitration, and in an opinion dated December 29, 2014, the arbitrator sustained the grievance in part. *Id.* Although the arbitrator denied Saunders's claim "for back pay [with] interest * * * based upon [her] failure to cooperate

with [RTA]'s reasonable investigation" of her use of leave, the arbitrator directed RTA to reinstate her "to her former position * * *, subject to [RTA]'s option to require that she pass a fitness * * * examination." *Id.*

{¶ 18} The Equal Employment Opportunity Commission issued a right-to-sue letter to Saunders on February 6, 2015. *Id.* at Exhibit 58. Saunders then filed a complaint in the United States District Court for the Southern District of Ohio on June 5, 2015, which she voluntarily dismissed. *See* Judgment Entry 6. She filed a second complaint on June 25, 2017, but the court dismissed her federal causes of action with prejudice because the applicable federal statutes of limitations had run. *See id.*

{¶ 19} On October 24, 2019, Saunders filed her complaint in the instant action, asserting causes of action for sex discrimination under R.C. 4112.02(A); disability discrimination under R.C. 4112.02(A); and retaliation under R.C. 4112.02(J).[6] RTA moved for summary judgment on June 30, 2020, and the trial court sustained RTA's motion in its final order of September 25, 2020. Saunders timely filed her notice of appeal to this court on October 22, 2020.

## II. Analysis

{¶ 20} For her assignment of error, Saunders contends that:

> THE TRIAL COURT ERRED WHEN GRANTING SUMMARY

---

[6] The statute of limitations for a cause of action pursuant to R.C. 4112.99 is six years. *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281, 638 N.E.2d 991 (1994), syllabus; *Jackson v. Internatl. Fiber*, 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 20 (2d Dist.), citing *Cosgrove* at syllabus; *but see Moore v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 10AP-732, 2011-Ohio-1607, ¶ 14-20. Saunders was terminated for the first time on February 28, 2011, and for the second time on December 16, 2013.

JUDGMENT TO DEFENDANT[.]

{¶ 21} Saunders argues that the trial court erred by entering judgment pursuant to Civ.R. 56 because the evidence before the court did not suffice to eliminate any genuine dispute of material fact. *See* Appellant's Brief 20-34. Under the rule, summary judgment is proper only where: (1) a case presents no genuine dispute as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion, which is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); *Dalzell v. Rudy Mosketti, L.L.C.*, 2d Dist. Clark No. 2015-CA-93, 2016-Ohio-3197, ¶ 5, citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The substantive law of the claim or claims being litigated determines whether a fact is "material." *Herres v. Millwood Homeowners Assn., Inc.*, 2d Dist. Montgomery No. 23552, 2010-Ohio-3533, ¶ 21, citing *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

{¶ 22} Initially, the movant bears the burden of establishing the absence of any genuine dispute of material fact. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). The movant may rely only on evidence of the kinds listed in Civ.R. 56(C) for this purpose. *Dalzell* at ¶ 5, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets its burden, then the non-moving party bears a reciprocal burden to establish, as set forth in Civ.R. 56(E), that the case presents one or more genuine issues of fact to be tried. *Id.* at ¶ 6. Like the movant, the non-moving party may not rely merely upon the allegations or denials offered in the pleadings but

"must be able to [present] evidentiary materials of the type[s] listed in Civ.R. 56(C)." *Dresher* at 293, quoting Civ.R. 56(E); *Dalzell* at ¶ 6. On appeal, a trial court's ruling on a motion for summary judgment is reviewed de novo. *Dalzell* at ¶ 6, citing *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42.

{¶ 23} Under R.C. 4112.02(A), an employer engages in "an unlawful discriminatory practice" by discharging a person from employment "without just cause"; by refusing to hire a person; or by otherwise treating a person unfairly "with respect to hir[ing]," with respect to the granting of "tenure," with respect to the "terms, conditions, or privileges of employment," or with respect to "any [other] matter directly or indirectly related to employment," if the employer discharges the person, refuses to hire the person, or otherwise treats the person unfairly, based on the person's "race, color, religion, sex, military status, national origin, disability, age, or ancestry." Discrimination "may be proven by either direct or circumstantial evidence." *Temple v. City of Dayton*, 2d Dist. Montgomery No. 20211, 2005-Ohio-57, ¶ 85, citing *Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St.3d 125, 128, 672 N.E.2d 145 (1996).

{¶ 24} Direct evidence of discrimination "is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." (Citation omitted.) *Conley v. U.S. Bank Natl. Assn.*, 211 Fed.Appx. 402, 405 (6th Cir.2006); *Ceglia v. Youngstown State Univ.*, 10th Dist. Franklin No. 14AP-864, 2015-Ohio-2125, ¶ 16, citing *Conley* at 405. Circumstantial evidence, "on the other hand, is proof that does not, on its face, establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Conley* at 405. A claim of discrimination based on circumstantial evidence is adjudicated according to

the test described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which applies equally to claims in federal Title VII cases and to claims under R.C. Chapter 4112. *See Manion v. Interbrand Design Forum, LLC*, 2015-Ohio-348, 27 N.E.3d 1007, ¶ 12 (2d Dist.), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 582, 664 N.E.2d 1272 (1996); *Ceglia* at ¶ 15. In this case, Saunders relies on circumstantial evidence.

### A. Sex Discrimination

{¶ 25} Saunders's claim of sex discrimination relates to her termination in February 2011. Appellant's Brief 20-24. She maintains that solely on the basis of her gender, she was disciplined more severely for her failure to report an accident "than male drivers Darrell Sutton, Richard Smith, and Douglas Schenk." *Id.* at 20-21; *see* Complaint ¶ 118-130.

{¶ 26} The first part of the *McDonnell Douglas* test requires that a plaintiff "prove, by a preponderance of the evidence, a prima facie case of discrimination." *See Manion* at ¶ 12. To "prove a prima facie case of discrimination, [the] plaintiff must show: (1) that * * * she is a member of a protected group; (2) that * * * she was subject to an adverse employment decision; (3) that * * * she was qualified for the position; and (4) that * * * she was treated differently [from] similarly situated [colleagues]." *Gast v. City of Martins Ferry*, 2019-Ohio-1147, 129 N.E.3d 507, ¶ 6 (7th Dist.), citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-583 (6th Cir.1992). A co-worker may be deemed similarly situated to the plaintiff, for purposes of comparing disciplinary treatment, if the co-worker and the plaintiff "dealt with the same supervisor, [were] subject to the same standards," and were disciplined for essentially "the same conduct." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th

Cir.2000), citing *Mitchell* at 583.

{¶ 27} If the plaintiff proves a prima facie case of discrimination, then the burden of proof shifts to the defendant for the second part of the *McDonnell Douglas* test, which requires that the defendant " 'articulate some legitimate, nondiscriminatory reason' " for the defendant's adverse decision against the plaintiff. *Manion* at ¶ 12, quoting *McDonnell Douglas* at 802. In the third and final part of the test, the plaintiff must prove "that the defendant's [stated] reason [is] merely 'a pretext for discrimination.' " *Id.*, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To prove as much, the plaintiff must show that: (1) the defendant's stated reason had no basis in fact; (2) the defendant's stated reason was not its actual motivation for the adverse employment action at issue; or (3) the defendant's stated reason was insufficient to motivate the adverse action. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir.2008).

{¶ 28} The trial court found, and RTA tacitly concedes, that Saunders, "as a female, is a member of a protected group; that she was subject to an adverse employment [action]; and that she was qualified for [her] position as a bus driver, [given that] she ha[d] been working in that position for nearly [20] years." Judgment Entry 18; *see* Appellee's Brief 8-9. Nevertheless, the court entered judgment in favor of RTA on Saunders's claim of sex discrimination because Saunders "failed to demonstrate that [Sutton, Smith and Schenk] were similarly situated in all respects." *Id.* In other words, the court concluded that in opposition to RTA's motion for summary judgment, Saunders did not present sufficient evidence to give rise to genuine issues of material fact regarding the comparability of Sutton, Smith and Schenk.

{¶ 29} RTA terminated Saunders effective February 28, 2011, for failing to report an accident, which was deemed a Group 2 violation under Standards of Excellence. Saunders Deposition, Exhibit 11; Crutcher Affidavit, Exhibit B. At the time, Saunders had previously been cited for one Group 2 violation—arising from the incident on November 6, 2010, in which Saunders treated a customer poorly—and one Group 1B violation, for which little documentation appears in the record.[7] Saunders Deposition, Exhibit 10; Deposition of Kenneth McDaniel, Exhibits 9 and 11, Oct. 11, 2018. Group 1A violations under Standards of Excellence related to "safe driving," and a driver could have been cited under Group 1A for violations such as speeding and failing to stop at stop lights. Crutcher Affidavit, Exhibit B. A Group 1B violation was nominally related to "[q]uality [c]ustomer [s]ervice," but a driver could have been cited under Group 1B for a variety of violations, such as "[b]eing discourteous to * * * fellow employees" and "[t]aking [the] wrong [bus] from [the] garage." *Id.* The interoffice memorandum in which RTA notified Saunders of the sanction being imposed for the incident on November 6, 2010, concluded with a "final and last warning with respect to [Saunders's] [c]ustomer [s]ervice." Saunders Deposition, Exhibit 7.

{¶ 30} Saunders identifies Darrell Sutton, Richard Smith, and Douglas Schenk as comparators for purposes of the *McDonnell Douglas* test. *See* Complaint ¶ 20-23. The

---

[7] Standards of Excellence stated that for purposes of determining "[c]orrective actions" for Group 1 violations, "[p]rior * * * infractions in the same standard area [sic] that occurred within the previous [9 months would] be considered." Crutcher Affidavit, Exhibit B. The citation issued to Saunders for the unreported accident on February 5, 2011, indicates that Saunders was cited on January 29, 2011, for a "Group 1B" violation, although the conduct for which Saunders apparently received a Group 1B citation has not been established for the record. Saunders Deposition, Exhibit 10.

first of these, in alphabetical order, is Douglas Schenk. Schenk failed to report an accident on April 1, 2011, for which he received a Group 2 citation and a one-day suspension. McDaniel Deposition, Exhibit 30. At the time, Schenk had been cited for a Group 1A violation on July 22, 2010, a Group 1B violation on August 14, 2010, and one preventable accident on January 14, 2011.[8] McDaniel Deposition 139:11-148:19 and Exhibits 27-30.

{¶ 31} The second comparator is Richard Smith. Smith failed to properly secure a passenger's wheelchair on September 28, 2011, a Group 2 violation for which he received a two-day suspension. *Id.* at Exhibits 31 and 35. At the time, Smith had not previously been cited under Group 2, and he apparently had not been cited for any Group 1 violations within the preceding nine months. *See id.* at Exhibit 31. One week later, on October 5, 2011, Smith failed to report an accident, a second Group 2 violation for which he received merely a written warning and another two-day suspension. *Id.* at Exhibits 33 and 37. Additionally, Smith made an unauthorized stop on October 19, 2011, which was a Group 1A violation, but the record does not indicate whether the violation resulted in a disciplinary sanction. *Id.* at Exhibit 36; *see also* Crutcher Affidavit, Exhibit B.

{¶ 32} The third comparator is Darrell Sutton. Sutton was cited under Group 2 for filing a false report in connection with an incident on April 29, 2011, for which he received a three-day suspension. McDaniel Deposition 129:1-139:4 and Exhibits 23-24 and 26.

---

[8] Standards of Excellence also comprised an "Accident Policy" setting forth independent "penalties for [preventable accidents that] occurred within any [interval of 14] month[s]." Crutcher Affidavit, Exhibit B.

At the time, Sutton had not previously been cited under Group 2, and he apparently had not been cited for any Group 1 violations within the preceding nine months. *See id.* at Exhibit 23.

{¶ 33} In the Judgment Entry, the trial court held that Saunders had not proved a prima facie case of sex discrimination because she had not proved that the comparators were similarly situated to her, inasmuch as they "had not committed a violation of [RTA]'s Violence in the Workplace Policy, had not served a 30-day suspension, and had not received a 'final and last warning' close in time to their bus accidents." Judgment Entry 18. Saunders, however, was not cited for violating RTA's Violence in the Workplace Policy; instead, when it informed Saunders that she would be suspended for 30 days as a result of the incident on November 6, 2010, RTA explained that her conduct, in addition to being a violation of Standards of Excellence, was "also a violation of the Violence in the Workplace Policy * * *." (Emphasis omitted.) *See* Saunders Deposition, Exhibit 7.

{¶ 34} The incident, regardless, was Saunders's first Group 2 violation, and the record shows that each of the comparators received a substantially less severe sanction for his first Group 2 violation. Saunders was suspended for 30 days as a sanction for her first Group 2 violation, whereas Schenk received a one-day suspension for his first Group 2 violation, Smith a two-day suspension, and Sutton a three-day suspension. The question of whether the relative severity of the sanction imposed on Saunders for her first Group 2 violation was the product of sex discrimination, or the result of her simultaneous violation of more than one RTA policy, is a question of material fact; the fact that none of the male comparators served a suspension as long as 30 days is an example of RTA's alleged discrimination against Saunders, rather than a basis for distinguishing the

comparators.

{¶ 35} Furthermore, RTA's "final and last warning" to Saunders pertained specifically to customer service, but it did not purport to be a "final and last warning" with respect to policy violations of any other kind. Saunders Deposition, Exhibit 7. Saunders's termination on February 28, 2011, was ostensibly predicated on a failure to report an accident and did not implicate RTA's policies on customer service. Although the termination was a sanction for Saunders's second Group 2 violation, Smith's second Group 2 violation, which occurred one week after his first Group 2 violation, resulted only in a two-day suspension.

{¶ 36} The trial court also found that "even if [Saunders] had set forth a prima facie case of sex discrimination," she did not present sufficient evidence to meet her "burden to establish that [RTA]'s proffered reasons for terminating her [were] merely pretext[s] for discrimination." Judgment Entry 19. None of the RTA officials who gave deposition testimony, however, was able to provide an unequivocal explanation for the differences between the disciplinary actions taken against Saunders and the disciplinary actions taken against Schenk, Smith and Sutton. *See e.g.*, Second Crutcher Deposition 28:16-29:14, 139:3-149:13, 152:20-156:7 and 156:19-167:5; Donaghy Deposition 33:10-37:7, 53:18-54:18, 78:6-79:6 and 91:15-93:11; McDaniel Deposition 42:10-43:18, 46:12-49:19, 51:7-51:9, 61:22-64:23, 73:24-75:1, 86:2-86:11, 92:16-97:24, 112:17-115:19, 117:3-122:11, 127:4-146:10, 148:23-167:17 and 180:1-183:10. The deposition testimony of Kenneth McDaniel is illustrative.

{¶ 37} McDaniel, who retired from his position with RTA as Operations Analyst in 2016, signed the interoffice memoranda informing Saunders, Schenk, Smith and Sutton

of the disciplinary actions taken against them for their respective violations of Standards of Excellence. *See* McDaniel Deposition 15:3-17:17 and Exhibits 5, 17-18, 26, 30, 35 and 37. On cross-examination, McDaniel testified that despite being the author of the memoranda, he generally did not decide what discipline should be imposed and could not name the person or persons responsible for making the decisions. *See id.* at 61:22-64:23, 92:16-97:24, 92:16-97:24, 117:3-122:11. Asked to explain why Saunders was suspended for 30 days as a sanction for her first Group 2 violation, whereas Schenk received only a one-day suspension for his first Group 2 violation, McDaniel answered that he "[did]n't see a difference" in the documentation that would account for the disparity. *Id.* at 148:7-149:11. Similarly, McDaniel could not explain why Smith was suspended for two days as a sanction for his first Group 2 violation, whereas Saunders was suspended for 30 days for her first Group 2 violation, nor could McDaniel explain why Smith was suspended for two days as a sanction for his second Group 2 violation, whereas Saunders was terminated for her second. *Id.* at 149:14-157:15 and 164:23-167:4. Yet, while responding to a series of leading questions on direct examination, McDaniel arguably contradicted his cross-examination testimony. *See id.* at 180:1-183:10.

{¶ 38} We hold, then, that the evidence did not suffice to eliminate any genuine dispute of material fact regarding whether Saunders was similarly situated to one or more of the three male comparators identified in her complaint. Saunders, Schenk, Smith and Sutton dealt with the same supervisors and were subject to the same standards. Each was disciplined at least once for a Group 2 violation of Standards of Excellence, yet Saunders received a significantly more severe sanction for her first Group 2 violation than Schenk, Smith and Sutton received for their first Group 2 violations. Smith, for that

matter, received a significantly less severe sanction for his second Group 2 violation than Saunders, whose second Group 2 violation resulted in her termination. Moreover, the evidence did not suffice to eliminate any genuine dispute of material fact regarding the validity of RTA's purportedly nondiscriminatory reasons for its comparatively severe disciplinary actions against Saunders. Saunders's assignment of error is sustained as it relates to her claim of sex discrimination.

## B. Disability Discrimination

{¶ 39} Saunders's claim of disability discrimination relates to her termination in December 2013. She maintains that RTA terminated her employment solely because she had a disability. Appellant's Brief 24-30.

{¶ 40} To state a prima facie case of disability discrimination, a plaintiff must show that: "(1) [she] had a disability, (2) the defendant took an adverse employment action [against her], at least [partly] because [she] had the disability," and (3) the plaintiff, despite "having a disability, could safely and substantially perform the essential functions of [her] job" with "or without reasonable accommodation." *Wallace v. Mantych Metalworking*, 189 Ohio App.3d 25, 2010-Ohio-3765, 937 N.E.2d 177, ¶ 17 (2d Dist.), citing *Tibbs v. Ernst Ents., Inc.*, 2d Dist. Montgomery No. 22850, 2009-Ohio-3042, ¶ 22; *Miller v. Pond*, 171 Ohio App.3d 347, 2007-Ohio-2084, 870 N.E.2d 787, ¶ 25 (5th Dist.), citing *City of Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204 (1998). If the plaintiff states a prima facie case of disability discrimination, then the burden of proof shifts to the defendant, who must " 'articulate some legitimate, nondiscriminatory reason' " for its adverse action against the plaintiff. *Manion*, 2015-Ohio-348, 27 N.E.3d 1007, at ¶ 12, quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. If

the defendant satisfies its burden, then the plaintiff must prove "that the defendant's [stated] reason [is] merely 'a pretext for discrimination.' " *Id.*, quoting *Burdine*, 450 U.S. at 252-253, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 41} Here, the trial court found that Saunders failed to state a prima facie case of disability discrimination because she presented "no evidence that [her] condition at the time of her [second] termination * * * constitut[ed] a disability" as a matter of law, and because she presented no evidence showing that she "requested a reasonable accommodation [to allow her to] perform her job functions as a bus driver" despite her asserted disability. Judgment Entry 24. Even if Saunders had stated a prima facie case, however, the court would still have entered judgment in favor of RTA because, in response to RTA's "evidence of its legitimate, nondiscriminatory reasons for terminating [her] employment," Saunders "failed to set forth sufficient evidence [to] creat[e] an issue of fact" on the question of whether RTA's stated reason was merely a pretext for discrimination. *Id.* at 26.

{¶ 42} As part of her burden to state a prima facie case, Saunders had to show that despite "having a disability, [she] could safely and substantially perform the essential functions of [her] job." *Wallace* at ¶ 17. Yet, in her complaint, she alleges that she "had a disability that substantially limited one or more of her major life activities, including driving for extended [intervals] and sleeping," meaning "that she was temporarily unable to fulfill Ohio Department of Transportation * * * requirements for driving a commercial vehicle for sustained periods." Complaint ¶ 30-31 and 148.

{¶ 43} On August 20, 2013, September 20, 2013, and October 25, 2013, Saunders's physician certified that Saunders was "unable to perform any of [her] job

functions" as the result of her condition, of which the probable duration was "one year." Saunders Deposition, Exhibits 26, 31 and 38. RTA demanded in a letter dated November 20, 2013, that Saunders return to work, but Saunders acknowledges that at that point, "absent clearance from a physician, [she] could not legally resume her commercial driving responsibilities." Saunders Deposition, Exhibit 42; Complaint ¶ 69-70. Saunders's physician then submitted a letter to RTA dated November 26, 2013, in which she requested that Saunders be "[e]xcuse[d] * * * from work until further notice" and stated that Saunders would "be released to return to work [once her] condition [was] regulated and [she could] safely perform [her] job duties." (Emphasis added.) Saunders Deposition, Exhibit 45. Saunders was not released to return to work until December 18, 2013, two days after RTA terminated her employment. *Id.* at Exhibit 49.

{¶ 44} RTA perfunctorily denied Saunders's allegations. It did not, however, support its denial with evidence indicating that Saunders was not "substantially limit[ed] [in] one or more major life activities, including [activities such as] caring for [herself], performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"; that Saunders did not have "a record of a physical or mental impairment"; or that Saunders was not "regarded as having a physical or mental impairment." R.C. 4112.01(A)(13); *see* Answer ¶ 30-31 and 69-70.

{¶ 45} By the date of her termination on December 16, 2013, Saunders had provided a series of certifications from her physician indicating that she could not perform the essential functions of her job and that she would be unable to return to work for an indefinite period. Saunders Deposition, Exhibits 26, 31, 38 and 45. RTA was not required "to wait indefinitely for [Saunders's] medical condition to be corrected" such that

she could return to work, and the record precludes any genuine dispute over Saunders's allegation that she was disabled on the date of her termination. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.1998); *Foster v. Jackson Cty. Broadcasting, Inc.*, 4th Dist. Jackson No. 07CA4, 2008-Ohio-70, ¶ 21, citing *Gantt* at ¶ 21; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit 33; Second Crutcher Deposition, Exhibits 39, 52 and 58; McEntarfer Deposition, Exhibits 18-20; Saunders Deposition, Exhibits 26, 31, 38 and 45.

{¶ 46} Accordingly, we hold that the trial court did not err by entering summary judgment in favor of RTA on Saunders's claim of disability discrimination, although our reasoning differs from that of the trial court. Saunders presented evidence indicating that between August 2013 and December 16, 2013, she was unable to perform the essential duties of her position as a bus driver, with or without reasonable accommodation, and in her complaint, Saunders alleges that she was not able to perform the essential duties of her position. Consequently, Saunders could not state a prima facie case, and RTA was entitled to judgment as matter of law on her claim of disability discrimination. *See Wallace*, 189 Ohio App.3d 25, 2010-Ohio-3765, 937 N.E.2d 177, at ¶ 17. Saunders's assignment of error is overruled as it relates to her claim of disability discrimination.

## C. Retaliation

{¶ 47} Saunders's claim of retaliation relates to her termination in December 2013. *See* Complaint ¶ 136-144; Appellant's Brief 31-34. She maintains that RTA terminated her employment in retaliation for the challenge she raised to her previous termination in February 2011.

{¶ 48} Pursuant to R.C. 4112.02(I), an employer may not "discriminate in any

manner against [an employee] because [the employee] has opposed any unlawful discriminatory practice * * * or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [R.C.] 4112.01 to 4112.07." To state a prima facie case of retaliation, a plaintiff must prove that: "(1) she engaged in a protected activity; (2) [her] employer knew of [her] participation in the protected activity; (3) the employer [took adverse action against her]; and (4) a causal link exists between the protected activity and the adverse action." *Shaw v. Access Ohio*, 2018-Ohio-2969, 118 N.E.3d 351, ¶ 25 (2d Dist.), citing *Carney v. Cleveland Hts.-Univ. Hts. City School Dist.*, 143 Ohio App.3d 415, 428, 758 N.E.2d 234 (8th Dist.2001). If the plaintiff proves a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse action against the employee, and if the employer meets its burden, then the burden shifts to the plaintiff to prove that the employer's stated reason was a pretext for discrimination. *See Carney* at 429. The plaintiff may prove that the employer's reason was merely pretextual "either directly[,] by [demonstrating] that a discriminatory reason more likely motivated the employer," or "indirectly[,] by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089, 67 L.Ed.2d 207, citing *McDonnell Douglas*, 411 U.S. at 804-805, 93 S.Ct. 1817, 36 L.Ed.2d 668.

{¶ 49} The trial court found that Saunders "failed to set forth sufficient evidence establishing a causal link between her protected activity * * * and [her] subsequent termination" in December 2013. *See* Judgment Entry 28. In addition, the court found that in response to RTA's stated reason for terminating Saunders—her allegedly improper use of leave—Saunders "failed to set forth evidence that [RTA's explanation was] merely

[a] pretext."  *Id.*

**{¶ 50}** Saunders suggests that the complaint she filed with the Ohio Civil Rights Commission in connection with her previous termination in February 2011 was settled on September 10, 2013, and in reliance on that fact, she posits a causal connection between the resolution of the complaint she filed with the Commission and her termination in December 2013.   Appellant's Brief 13-14 and 34.   The Commission, however, "ratified [its] Conciliation Agreement [with RTA] in the * * * matter of [*Selena Saunders v. Greater Dayton Regional Transit Authority*]," Case No. DAY76(22404)08022011, EEOC Case No. 22A-2011-03878C, Complaint No. 12-EMP-DAY-22404, "[a]t [the Commission's] meeting on July 18, 2013."   Saunders Deposition, Exhibit 16.   By July 2013, RTA had already issued attendance-related reprimands to Saunders on February 13, 2013, April 6, 2013, and June 18, 2013, and the last of these was a "[f]inal [w]ritten [w]arning."   *Id.* at Exhibit 19.

**{¶ 51}** Saunders applied for leave under the FMLA on or about August 27, 2013, which RTA granted.   *Id.* at Exhibit 26; Judgment Entry 4.   On September 10, 2013, the Equal Employment Opportunity Commission notified Saunders that "the matter in [EEOC Case No. 22A-2011-03878C] ha[d] been successfully settled," which "conclude[d] [its] processing" of her complaint.   Saunders Deposition, Exhibit 17.   Between September 1, 2013, and September 24, 2013, RTA began its investigation of Saunders's use of leave. Crutcher Affidavit ¶ 3; McEntarfer Deposition, Exhibit 20.   Saunders requested an extension of her leave on or about September 20, 2013, and with its investigation apparently in progress, RTA approved the request on September 24, 2013.   Saunders Deposition, Exhibits 31 and 40; McEntarfer Deposition, Exhibit 20.

{¶ 52} Thus, contrary to Saunders's argument, the record comprises no evidence that RTA's investigation of her use of leave—and eventual termination of her employment—was causally connected to the resolution of her administrative complaint. Appellant's Brief 34. By September 24, 2013, on which date RTA's investigation began or had already begun, Saunders had a documented history of attendance-related reprimands, and she had requested additional leave—under the FMLA—on August 27, 2013. Saunders notes, with some support in the record, that RTA pursued its investigation of her use of leave with more intensity than was typical for such investigations, but the nature of the investigation itself is not evidence of a causal connection between the resolution of her administrative complaint and the termination of her employment.

{¶ 53} As the trial court found, moreover, Saunders did not present sufficient evidence to demonstrate that RTA's explanation for her termination in December 2013 was merely a pretext. *See* Judgment Entry 28. Saunders's history of attendance-related reprimands indicates that RTA had concerns about her attendance and use of leave for nearly a year before it terminated her employment, and the record includes evidence that RTA had objectively valid reasons for its suspicions, regardless of whether Saunders actually misused her leave under the FMLA. *See Burdine*, 450 U.S. at 256, 101 S.Ct. 1089, 67 L.Ed.2d 207; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit 33; Second Crutcher Deposition, Exhibits 39, 46, 48, 52 and 58; McEntarfer Deposition, Exhibits 18-20.

{¶ 54} We hold that RTA met its burden to establish the absence of any genuine dispute of material fact pertaining to Saunders's claim for retaliation, and concomitantly,

that the trial court did not err in entering summary judgment in favor of RTA on the claim. Saunders's assignment of error is overruled as it relates to her claim of retaliation.

### III. Conclusion

{¶ 55} The trial court erred by entering judgment under Civ.R. 56 on Saunders's claim of sex discrimination because the evidence did not eliminate any genuine dispute of material fact on the question of whether the three male comparators identified in the complaint were similarly situated to Saunders for purposes of the *McDonnell Douglas* test, nor did the evidence eliminate any genuine dispute of material fact regarding RTA's purportedly nondiscriminatory reasons for its comparatively less favorable treatment of Saunders. Regarding Saunders's claim of disability discrimination, however, the trial court did not err by entering judgment under Civ.R. 56, because the record did not give rise to any genuine dispute of material fact with respect to Saunders's alleged inability to perform the essential functions of her position at the time of her termination. In addition, the trial court did not err by entering summary judgment on Saunders's claim for retaliation, because Saunders failed to present evidence sufficient to create a genuine dispute of material fact with respect to the alleged causal connection between her engaging in protected activity and RTA's termination of her employment. Therefore, the trial court's judgment of September 25, 2020, is reversed in part, as it relates to Saunders's claim of sex discrimination. In all other respects, the judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Julius L. Carter
Matthew L. Roberts
Ryan A. Cates
Hon. Mary Katherine Huffman