[Cite as *Saunders v. Greater Dayton Regional Transit Auth.*, 2023-Ohio-1514.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| SELENA R. SAUNDERS | : | |
| | : | |
| Appellant | : | C.A. No. 29573 |
| | : | |
| v. | : | Trial Court Case No. 2019 CV 04965 |
| | : | |
| GREATER DAYTON REGIONAL | : | (Civil Appeal from Common Pleas |
| TRANSIT AUTHORITY | : | Court) |
| | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 5, 2023

. . . . . . . . . . .

MATTHEW L. ROBERTS & LAUREN M. LARRICK, Attorneys for Appellee

JULIUS L. CARTER, Attorney for Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant Selena R. Saunders appeals from a judgment of the Montgomery County Court of Common Pleas, which dismissed her action with prejudice for failure to prosecute. For the reasons that follow, we affirm the judgment of the trial court.

I.      Facts and Course of Proceedings

{¶ 2} This is the second time Saunders has appealed a decision to this court related to the action she commenced against Defendant-Appellee Greater Dayton Regional Transit Authority ("RTA") in the Montgomery County Court of Common Pleas. Our prior opinion was issued on September 3, 2021. *Saunders v. Greater Dayton Regional Transit Auth.*, 2d Dist. Montgomery No. 28942, 2021-Ohio-3052. We will repeat a few of the facts from our prior opinion to provide some background for the current appeal.

{¶ 3} Saunders, an African-American woman, began working for RTA as a bus driver in December 2000. She took the position subject to a collective bargaining agreement between RTA and the Amalgamated Transit Union, Local 1385 ("ATU"). On November 6, 2010, Saunders berated an unruly passenger during a stop at Wright Stop Plaza. Afterward, Saunders received a citation from RTA pursuant to the policy of progressive discipline in effect at the time of the incident. Saunders was suspended for 30 days and was advised that the suspension was her final and last warning with respect to her customer service. *Id.* at ¶ 3-6.

{¶ 4} On February 5, 2011, Saunders apparently struck a wooden utility pole while driving an RTA bus and did not report the incident. Saunders maintained that she had been unaware of any impact, but RTA cited her for a violation of its policy of progressive discipline. Following a hearing, Saunders' employment was terminated effective February 28, 2011. *Id.* at ¶ 7.

{¶ 5} Saunders filed a grievance challenging her termination from employment.

An arbitrator found that her termination was not for just cause and directed RTA to reinstate her. Saunders also filed a charge of sex discrimination with the Ohio Civil Rights Commission, which issued a determination letter finding probable cause that RTA had engaged in an unlawful discriminatory practice by subjecting Saunders to discipline that was substantially harsher than that issued to similarly situated male co-workers. *Id.* at ¶ 8-9.

{¶ 6} In August 2013, Saunders applied for leave under the Family and Medical Leave Act. RTA approved the request but then began an inquiry into whether Saunders was requesting leave to accommodate her busy schedule at a nursing school that she was attending. RTA hired a private investigator and received an anonymous tip that Saunders had been bragging in public about taking mental leave of absences so that she could finish nursing school while receiving her usual wage from RTA. Ultimately, RTA terminated Saunders' employment effective December 16, 2013. ATU filed a grievance. The arbitrator sustained the grievance in part, directing RTA to reinstate Saunders to her former position. *Id.* at ¶ 11-17.

{¶ 7} The Equal Employment Opportunity Commission issued a right-to-sue letter to Saunders in February 2014. Saunders filed a complaint in the United States District Court for the Southern District of Ohio on June 15, 2015, which she later voluntarily dismissed. She filed a second complaint on June 25, 2017, but the court dismissed her federal causes of action with prejudice, because the applicable federal statutes of limitations had run. *Id.* at ¶ 18.

{¶ 8} On October 24, 2019, Saunders filed her complaint in the common pleas

court, asserting causes of action for sex discrimination under R.C. 4112.02(A), disability discrimination under R.C. 4112.02(A), and retaliation under R.C. 4112.02(J). RTA moved for summary judgment on all claims, and the trial court sustained RTA's motion on September 25, 2020. Saunders filed a timely notice of appeal. *Saunders* at ¶ 19.

{¶ 9} On September 3, 2021, we reversed the trial court's judgment as it related to Saunders' claim of sex discrimination, "because the evidence did not eliminate any genuine dispute of material fact on the question of whether the three male comparators identified in the complaint were similarly situated to Saunders * * * , nor did the evidence eliminate any genuine dispute of material fact regarding RTA's purportedly nondiscriminatory reasons for its comparatively less favorable treatment of Saunders." *Id.* at ¶ 55. We affirmed the trial court's judgment in all other respects.

{¶ 10} On October 3, 2021, the trial court issued a final pretrial order in which it set deadlines for completion of all discovery, summary judgment motions, and objections to trial materials. The order set a final pretrial telephone conference for March 17, 2022, and a jury trial for March 28, 2022. The order also contained the following warning:

> **FAILURE TO APPEAR AT THE FINAL PRETRIAL CONFERENCE OR TRIAL, OR FAILURE TO HAVE A WELL INFORMED SUBSTITUTE AVAILABLE, WILL RESULT IN DISMISSAL OF THE CASE FOR FAILURE TO PROSECUTE UNDER OHIO R. CIV. P. 41(B)(1). COUNSEL MAY ALSO BE SUBJECT TO OTHER APPROPRIATE SANCTIONS.**

(Emphasis sic.)

{¶ 11} Following the October 2021 order, the parties filed numerous motions in preparation for the upcoming deadlines. It became clear that the trial would not proceed in March 2022. The trial court issued a new final pretrial order setting a final pretrial telephone conference for July 28, 2022, and a jury trial for August 8, 2022. This order contained the same warning about dismissal that was included in the previous final pretrial order. The trial court subsequently issued another final pretrial order on April 19, 2022, once again identifying a final pretrial telephone conference for July 28, 2022, and a jury trial to begin on August 8, 2022. This order contained the same warning about dismissal of the case for failure to prosecute that was contained in the previous final pretrial orders.

{¶ 12} On June 30, 2022, Saunders filed a motion for recusal, requesting that the trial court recuse itself from further proceedings in the matter, "because the Court has demonstrated a clear bias against Plaintiff's counsel and an unwillingness to be impartial." On July 22, 2022, the trial court overruled Saunders' motion. In its decision, the trial court summarized some of the actions by Saunders' counsel over the past few years in the case, including his previous withdrawal as counsel and his limited appearances. In overruling Saunders' motion, the trial court concluded, "This court has no personal bias nor prejudice for or against any party or counsel to these proceedings, is well aware of its obligations in presiding over a trial, and can continue to fairly and impartially preside over this matter." Decision Overruling Motion for Recusal (July 7, 2022) at p. 5.

{¶ 13} The week before the August 8, 2022 jury trial, the sister of Saunders' counsel was admitted to the hospital. According to Saunders' counsel, Julius Carter, this

required him to reschedule the day on which he was to meet with the trial court's bailiff to test out the courtroom technology. Appellant's Brief, p. 6. However, at no point did Saunders or her counsel request a continuance of the trial. "On the contrary, [Attorney Carter] told the bailiff the hospitalization would have no impact on the trial schedule." *Id.*

{¶ 14} The jury trial began as scheduled on Monday, August 8, 2022. Although Attorney Carter's sister was still in the hospital at that time, this fact did not result in any interruptions in the jury trial on that first day. According to Carter, on August 9, 2022, the second day of trial, he sent an email early in the morning to the trial court's bailiff and opposing counsel alerting them that he was likely not going to be able to make it to court that day, because his sister was being moved to the intensive care unit ("ICU") at the hospital. *Id.* at 7. However, his sister ultimately was not moved to ICU that morning, and Saunders' counsel was able to arrive on time for the beginning of the second day of the trial. The trial proceeded as scheduled. *Id.*

{¶ 15} According to Attorney Carter, during the afternoon of the second day of trial, while opposing counsel was conducting cross-examination of a witness, he received a message that his sister was being moved to the ICU. He wrote a note to inform the bailiff and requested a side bar after opposing counsel finished the cross-examination of the witness. *Id.*

{¶ 16} At sidebar, the following discussion occurred:

MR. CARTER: My next witness is Ms. Crutcher, who's on video. And my

- -

THE COURT: How long was it?

MR. CARTER: We don't know what you cut out.

MR. ROBERTS: Yeah, so we don't know what you cut out. I believe the deposition, it's - -

THE COURT: We'll need to go off the record - -

MR. ROBERTS: Okay.

THE COURT: - - without them in here. So we'll need to take a break.

MR. CARTER: And then separate from that, my sister's in the ICU, so I need to end it for the day pretty shortly. Things have changed.

THE COURT: We will discuss that when the jury is not in the courtroom.

MR. CARTER: That's fine.

Trial Tr., p. 3.

{¶ 17} After the jury left the courtroom, the trial court proceeded to hear argument and rule on several objections. According to Attorney Carter, he was packing up his trial gear at this point, because he was planning on leaving for the hospital. Appellant's Brief, p. 8. As a result, he did not actively participate in any of the arguments taking place regarding the outstanding objections. Once the trial court finished ruling on the remaining objections, the following exchange occurred between the trial court and Saunders' trial counsel:

THE COURT: Mr. Carter, if you need to not be in here during the deposition, that's fine. But I'm not going to stop the trial.

If you need to go outside and make calls or something, that's fine. When Ms. Crutcher's deposition is finished for the day, if it appears to be

appropriate timewise, then we'll conclude for the day.

MR. CARTER:   Say that again, please?

THE COURT:   If you need to step out and make calls or do something during the deposition, you should feel free to do so.   But I am not going to stop the trial at this point.

If you had a family emergency - - you contacted the bailiff late last week and said you had a family issue.   You didn't ask for a continuance.   You didn't ask for a phone conference.

Unfortunately, life experiences happen, and I apologize for those, but I am concerned about a jury, and we're in the middle of a trial, so - -

MR. CARTER:   Are you kidding me?

THE COURT:   No, Mr. Carter, I am not.

MR. CARTER:   Yeah, you must be.   I'm leaving and I'm going to the hospital.

THE COURT:   You can feel free to do so.

MR. CARTER:   Now, if you want to continue to play the video, that's fine.

THE COURT:   Sir, you can make your choice - -

MR. CARTER:   I've made it.

THE COURT:   - - about what you choose to do.

MR. CARTER:   I've made it.

THE COURT:   Amy (phonetic), would you please bring the jury back in?

THE PLAINTIFF:   What about me?

MR. CARTER:   (Indiscernible) out in the hall.

THE PLAINTIFF:   All right.

THE COURT:   Now, frankly, if you leave and don't call this witness - - Mr. Carter, if you leave, I am going to find in favor of the Plaintiff (sic).   He has not called the witness, and I am not playing the video without the witness being called by counsel.

Amy, would you go get him and tell him if he doesn't come back in here, I am going to grant judgment for the Defendant?   I will have no choice.   He has not called the witness, and I cannot call the witness.

No, I want to be on the record.

Mr. Carter, you have not called the witness.   Until you call the witness on the record, I cannot.   And if you want to call the witness and have the video played and you don't want to be present, that's your choice.   But I cannot call the witness.

MR. CARTER:   Mr. Roberts is - - it's Mr. Roberts' witness.   He's the one who started the deposition.

THE COURT:   Sir, you don't understand.   We're in your case.   You have to - - he's not calling the witness now.   He - - we're not in his case.

* * *

Mr. Carter, please call your next witness.

MR. CARTER:   The Plaintiff calls Delbera Crutcher.

THE COURT:   This is by video, ladies and gentlemen, and the videotape -

- because the video was made to accommodate Ms. Crutcher's medical condition, she is permitted to testify by video.

* * *

In addition, you'll notice that Mr. Carter and Ms. Saunders have chosen to leave the courtroom without the Court's permission.   That was not with the Court's permission, and they have chosen to do so. This witness was called at Plaintiff's request.

Trial Tr., p. 12-15.

{¶ 18} After Saunders and her counsel left the courtroom, the videotaped deposition was played for the jury.   Ultimately, the second day of trial ended without finishing the playing of the videotaped deposition.   The trial was scheduled to resume on Thursday, August 11, 2022, after taking a scheduled day off on Wednesday, August 10, 2022.

{¶ 19} At 12:00 a.m. on the morning of August 11, 2022, Attorney Carter sent the following email message to the trial court's bailiff and copied opposing counsel:

Amy:   I'm emailing to notify the court, and opposing counsel, that I will not be returning to court this week.   For the same reason I left yesterday, I will be unavailable.   I will file a more formal explanation when I have the opportunity.   I will send someone to remove my chair from the courtroom.   Thank you, Julius L. Carter.

{¶ 20} The jury, the trial court, and opposing counsel were present in the courtroom on the morning of August 11, 2022, for the beginning of the third day of trial.   The trial

court went on the record at 9:01 a.m. and explained the situation it was facing. Trial Tr., p. 15-24. According to the trial court, the trial had been scheduled to resume at 8:30 that morning, but Saunders and her counsel were not present. The court explained what had transpired since the afternoon of August 9, 2022, when Saunders and her counsel left the trial without permission. Attorney Carter did not contact the trial court through its bailiff at any point on August 10, 2022, the scheduled day off from trial. Counsel for RTA also did not hear anything from Saunders' counsel despite the fact that RTA's counsel sent him an email letting him know that the videotaped deposition had not been completed on the second day of trial and that the remainder of it would be played at the beginning of the third day of trial. *Id.* at 18-19, 21.

{¶ 21} The trial court then explained that it had received an email from its bailiff at 8:07 a.m. on the morning of the third day of trial, which forwarded a 12:00 a.m. email from Attorney Carter. That email from Attorney Carter stated:

> I'm emailing to notify the Court and opposing counsel that I will not be returning to court this week. For the same reason I left yesterday, I will be unavailable. I will file a more formal explanation when I have the opportunity. I will send someone to remove my chair from the courtroom.

*Id.* at 19.

{¶ 22} At 8:30 a.m., when it was clear that Saunders and her counsel were not present, the trial court asked its bailiff to call Attorney Carter's office and send him an email. The email to Attorney Carter stated: "Mr. Carter, everyone is here and ready for trial this morning. Judge expects you to be here immediately, and if you and your client

are not here, she will dismiss your case with prejudice." *Id.* at 20. As of 9:08 a.m. the bailiff had not received any response from Carter. Further, the trial court asked its judicial assistant to call the hallway at the courthouse for both Saunders and her counsel, but there was no response. *Id.* at 20-21.

{¶ 23} The court then reiterated that Saunders' counsel had not provided any details to the trial court other than that his sister was in the hospital. He had not provided any details about what hospital she was in or whether he was her guardian, caregiver, power of attorney, or decisionmaker. *Id.* at 21. Then, the trial court explained that the email from 12:00 a.m. that morning gave no explanation of the circumstances involving Carter's sister and no explanation of when or if he would anticipate going on with the trial. The court stated that "I can't even read his email to suggest he's asking for a continuance. He simply says, 'I will not be returning to court this week.' I can't even determine if there's a sufficient basis for a continuance because of the really utter lack of detail of any circumstances. Again, other than the fact that he has a family member in the hospital, I can't read anything from that. Again, I don't even know where." *Id.* at 22.

{¶ 24} Ultimately, at 9:12 a.m., the trial court decided to dismiss the case with prejudice, explaining:

> THE COURT: All right. The Defense being here and prepared - - and again, I do want the record to reflect that when Mr. Carter and his client abruptly left court on Tuesday without the Court's permission, without asking for a continuance, Defense counsel and the Defense - - corporate representative was present and stayed here through that at least two hours

of the deposition that was played, and that the Defense has not abandoned the case.

But because Mr. Carter and his client are not present, there has been no request for continuance, there has not been sufficient information provided to the Court that would allow the Court to determine if a continuance or a brief delay of the proceedings was appropriate - - in addition, I'm going to note for the record that the jury has been in the jury room since approximately 8:30 and are here and prepared to go forward.

I am going to find that the Defendant - - or, excuse me, the Plaintiff and her counsel have abandoned this litigation, they have failed to appear for trial, failed to continue to prosecute the case, and therefore I am going to, on the Court's own motion, dismiss this matter with prejudice for the Plaintiff's failure to prosecute and for all of the reasons I have just indicated on the record.

The matter will be dismissed.

*Id.* at 23-24.

{¶ 25} The trial court issued an order of dismissal memorializing its oral decision, stating: "For the reasons stated on the record on August 11, 2022, and resulting from Plaintiff and Plaintiff's counsel's failure to appear, this matter is **DISMISSED** with prejudice. Costs to Plaintiff." (Emphasis sic.) That same day, Attorney Carter's sister passed away. Appellant's Brief, p. 10.

{¶ 26} Nineteen days later, on August 30, 2022, Carter filed a "NOTICE

REGARDING THE NEED TO LEAVE COURT WITHOUT LEAVE OF COURT AND THE INABILITY TO RETURN ON THE NEXT SCHEDULED COURT DATE." In his notice, Carter explained that his August 11th email "clearly indicate[d] that a more formal document would be filed as soon as it was possible. Rather than allow Plaintiff's Counsel the opportunity to provide a more formal written explanation, the Court went on the record and dismissed Plaintiff's case with prejudice at the start of the next court day." Carter also pointed out in a footnote in the notice that "The Court had the opportunity to issue a show cause order or dismiss the case without prejudice but instead chose to dismiss the case with prejudice." Carter attached a copy of his August 11, 2022 email to the trial court's bailiff.

{¶ 27} Saunders filed a timely notice of appeal from the trial court's August 11, 2022 order dismissing her action with prejudice.

II.     The Trial Court Did Not Abuse Its Discretion by Dismissing Plaintiff's Action with Prejudice

{¶ 28} Saunders' sole assignment of error states:

THE TRIAL COURT ERRED WHEN DISMISSING PLAINTIFF'S CASE WITH PREJUDICE. THE TRIAL COURT ERRED WHEN ASSESSING COSTS TO PLAINTIFF.

{¶ 29} Although Saunders styles her assignment of error in terms of whether the trial court erred when it dismissed her case with prejudice, "[t]he power to dismiss for lack of prosecution is within the sound discretion of the trial court, and appellate review is

confined to whether the trial court abused its discretion." *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982), citing *Lopez v. Aransas Cty. Indep. School Dist.*, 570 F.2d 541, 544 (5th Cir.1978). An " 'abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 30} Civ.R. 41(B) governs dismissals for failure to prosecute. Civ.R. 41(B)(1) provides: "Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim." Before a trial court may dismiss a complaint for failure to prosecute under Civ.R. 41(B)(1), "the record must show that the plaintiff had notice that dismissal of the complaint was a possibility." (Citations omitted.) *Garofolo v. West Bay Care and Rehab. Ctr.*, 8th Dist. Cuyahoga No. 109740, 2021-Ohio-1883, ¶ 15. "The purpose of the notice requirement is to provide a party who is in default of a court order an opportunity to correct or explain the circumstances of the party's default and to provide reasons why the case should not be dismissed with prejudice." (Citations omitted.) *Whipple v. Estate of Prentiss*, 2020-Ohio-2825, 154 N.E.3d 550, ¶ 17 (8th Dist.).

{¶ 31} "We acknowledge that a dismissal with prejudice is a harsh sanction for a failure to appear." *Tonti v. Hayes*, 6th Dist. Lucas No. L-05-1202, 2006-Ohio-2229, ¶ 26,

citing *Pembaur* at 92. Further, "[t]he courts of Ohio have long recognized that the interests of justice are better served when courts address the merits of claims and defenses at issue rather than using procedural devices to resolve pending cases." *Foley v. Nussbaum*, 2d Dist. Montgomery No. 24572, 2011-Ohio-6701, ¶ 20, citing *Moore v. Emmanuel Family Training Ctr., Inc.*, 18 Ohio St.3d 64, 70, 479 N.E.2d 879 (1985). But "[w]here a party's conduct is 'negligent, irresponsible, contumacious or dilatory,' it may provide grounds for a dismissal with prejudice for a failure to prosecute or to obey a court order." *Foley* at ¶ 20, quoting *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 632, 605 N.E.2d 936 (1992).

**{¶ 32}** Saunders and her counsel had at least three warnings that failure to appear at the trial may result in the case being dismissed pursuant to Civ.R. 41(B)(1). Despite this, Saunders and her counsel voluntarily chose to leave the jury trial early on the second day of the trial and failed to show up for the third day of trial. There is no doubt that Attorney Carter had real-life, important events going on outside the courthouse those two days. The impact of the loss of a sibling cannot be overestimated. But Carter and his client also had real-life, important events going on inside the courthouse during those two days. Neither Saunders nor her counsel had the trial court's permission to leave and abandon the trial. And neither Saunders nor her counsel requested a continuance of the trial, either orally or in writing. Further, there was little real-time information in the record as to what exactly was transpiring with Carter's sister in the week before and the week of trial. While Carter provides additional information in the appellate briefs, this information does not appear to have been in the record for the trial court to consider when it was

determining whether to dismiss Saunders' action with prejudice.

{¶ 33} The situation before us in this case is both tragic and unfortunate. If Saunders or her counsel had requested a continuance of the trial either before the trial began or before they left without permission on the second day of trial, and the trial court had overruled the request, then there would be a more difficult decision to make as to whether the trial court abused its discretion in dismissing the case. But that did not happen. Rather, the trial court was faced with a party and her counsel who appeared to be voluntarily abandoning a trial without the court's permission and with very little explanation given other than that the attorney's sister was in the ICU. No explanation was given as to whether Carter would be able to proceed with the trial within a reasonable time or as to whether well-informed, substitute counsel would be available to proceed, as required in the warnings contained in the trial court's final pretrial orders. Given the specific facts in the record before us, we cannot conclude that the trial court abused its discretion in dismissing the case with prejudice.

{¶ 34} Saunders also contends that the trial court erred by ordering her to pay court costs. But Saunders concedes that if we do not reverse the trial court's decision to dismiss her action with prejudice, then the trial court did not err in assessing her court costs. Appellant's Reply Brief, p. 10. Therefore, the sole assignment of error is overruled.

III. Conclusion

{¶ 35} Having overruled the sole assignment of error, the judgment of the trial court

is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and EPLEY, J., concur.